# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| STEWART ABRAMSON, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY, 0995316 B.C. LTD. D/B/A XENCALL and BAY AREA HEALTH, LLC,<br><br>Defendants. | No. 8:19-cv-02523-TPB-AAS<br><br>**FIRST AMENDED COMPLAINT**<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## Preliminary Statement

1. Plaintiff Stewart Abramson ("Plaintiff" or "Mr. Abramson") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Mr. Abramson alleges that Federal Insurance Company ("Federal Insurance") commissioned automated telemarketing calls to consumers without their prior express written consent.

3. These calls were made by Bay Area Health, LLC ("Bay Area Health") with the assistance of 0995316 B.C. Ltd. d/b/a XenCall ("XenCall"), the company that provided them with access to automated dialing equipment to send pre-recorded messages.

4. Mr. Abramson and putative class members never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Mr. Abramson brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls promoting Federal Insurance from the co-defendants.

5. A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

6. Plaintiff Stewart Abramson was a resident of Pennsylvania when he received the telemarketing call that forms the basis of this lawsuit, and he currently resides in Pennsylvania.

7. Defendant Federal Insurance Company is a domestic corporation with its principal place of business at 251 North Illinois, Suite 1100 in Indianapolis, IN with a registered agent of CT Corp., 150 West Market St., Suite 800 in Indianapolis, IN 46204. Federal Insurance, through its vendors such as Bay Area Health, engages in telemarketing conduct into this District. Federal Insurance also services insurance contracts in this District.

8. Defendant Bay Area Health, LLC is a Florida limited liability company with a principal place of business at 6213 State Road 54 in New Port Richey, FL.

9. Defendant 0995316 B.C. Ltd. d/b/a XenCall is a company incorporated in British Columbia with a principal place of business at 910 Richards St., Unit 201 in Vancouver.

**Jurisdiction & Venue**

10. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

11. The Court has personal jurisdiction over Federal Insurance because they engaged in telemarketing conduct with Bay Area Health into this District. Furthermore, Federal Insurance serviced insurance agreements arising from the telemarketing calls in this District. Finally, XenCall assists its customers, including Bay Area in this district, make automated telemarketing calls. XenCall's platform also makes a substantial amount of automated calls into this District.

12. The Court has personal jurisdiction over Bay Area Health because of their registration with the State of Florida. In addition, Bay Area Health maintains its principal place of business in the State of Florida.

13. Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls were made from this District and because one of the Defendants resides in this District.

**TCPA Background**

14. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing .

. . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls to Cellular Telephones</u>

15. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

16. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated and prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

17. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

18. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and

conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*

27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

## Factual Allegations

Call to Mr. Abramson

19. Plaintiff Abramson is a "person" as defined by 47 U.S.C. § 153(39).

20. Mr. Abramson's telephone number, (412) 418-XXXX, is registered to a cellular telephone service.

21. Mr. Abramson's cellular telephone number, (412) 418-XXX has been listed on the National Do Not Call Registry since some time in June of 2015.

22. Mr. Abramson was called by Bay Area Health on August 1, 2019.

23. When Mr. Abramson answered the call, the following pre-recorded message was played:

> Hello. This notice is to inform you that open enrollment for affordable health insurance has started. Please press five now to ensure you are on the plan that best suits your needs. Twenty-eighteen updated plans will save you up to fifty percent on your premiums, and you will have access to the nation's largest PPO network with reduced co-pays. Enrollment is easy. Approval is guaranteed, and all ages are accepted. Enrollment periods are limited, so please press five now. To deny affordable coverage, and be removed from this notification list, please press nine now.

24. As the company was not identified in the pre-recorded message, Mr. Abramson pressed the number five to identify the company that called him.

5

25. The pre-recorded message then continued:

Due to the special enrollment period you will save on doctor visits, lab work, prescription medication, and all hospitalization. Press seven to speak to an agent in your state. Again, an agent cannot remove you from the calling list. You must press nine now. To join the thousands of families saving on their everyday medical needs, press seven now.

26. Again, the company was not identified in the pre-recorded message, so Mr. Abramson pressed the number seven to identify the company that called him.

27. Mr. Abramson eventually spoke with a live individual who promoted a health insurance policy for Federal Insurance.

28. The individual, who said his name was "Brian Park", informed Mr. Abramson that the name "Christopher Paine" should be on the paperwork he receives.

29. Christopher Paine is the owner of Bay Area Health.

30. Mr. Abramson received documentation that confirmed that Bay Area Health was selling insurance policies for Federal Insurance Company as a result of the pre-recorded message.

31. The pre-recorded call came from the Caller ID number (205) 378-3964.

32. That Caller ID Number has been associated with 532 calls on the website RoboKiller, earning it a "Negative" rating. *See* https://lookup.robokiller.com/p/205-378-3964 (Last Visited October 8, 2019).

33. The website NoMoRobo identified it as the source of a "Health Insurance Scam". *See* https://www.nomorobo.com/lookup/205-378-3964 (Last visited Oct. 8, 2019).

34. Plaintiff is not a customer of any of the Defendants and had not consented to receive telemarketing calls prior to the receipt of the call.

35. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class.

36. Furthermore, in the Plaintiff's case, the call was made to a number that he had taken the affirmative step of registering on the National Do Not Call list.

37. Bay Area used the XenCall platform to make the automated calls.

### Federal Insurance's Liability for Bay Area Health's Conduct

38. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

39. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

40. In fact, the Federal Communication Commission has instructed that sellers such as Federal Insurance may not avoid liability by outsourcing telemarketing to third parties, such as Bay Area Health:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or

located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

41. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

42. Federal Insurance is liable for the Bay Area Health telemarketing calls.

43. First, Federal Insurance hired a company that used Bay Area Health to originate new business with automated telemarketing calls.

44. Furthermore, Federal Insurance could have restricted the company and Bay Area Health from using automated telemarketing, but it didn't.

45. Federal also accepted the benefits of Bay Area Health illegal telemarketing by accepting insurance policies, even though those policies were generated through illegal telemarketing.

46. Federal Insurance knew (or reasonably should have known) that Bay Area Health was violating the TCPA on its behalf and failed to take effective steps within its

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

power to force the telemarketer to cease that conduct. Any reasonable seller that accepts telemarketing call leads from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

47. In fact, Federal Insurance has received complaints and previously been sued for its vendors' violations of the TCPA. However, despite those complaints and lawsuits, Federal Insurance did not adequately investigate the calling conduct of Bay Area Health.

48. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

### XenCall's Liability for Bay Area's Calling Conduct

49. XenCall provides internet based prerecorded call campaign services to consumers and executes calls for those campaigns *en masse*. Predictably, XenCall's system can place prerecorded phone calls to cellular telephone numbers in an automated manner.

50. These calls are sent without first obtaining the call recipient's consent, in violation of the TCPA.

51. XenCall has actual knowledge of this unlawful conduct. Nonetheless, XenCall knowingly permits and facilitates such calls, even after learning of its partners' actions.

52. XenCall actively takes part in executing robocall campaigns, providing tools that allow the use of deceptive calling tactics and explicitly offering prerecorded calling and

auto-dialer services; and promising to provide everything needed to call and/or message multiple telephone numbers at once.

53.     XenCall provides (and encourages) a turnkey spam calling platform that it knows full well will be used to bombard consumers with unwanted contacts.

54.     XenCall provided Bay Area with local telephone numbers to make its automated calls.

55.     For years XenCall has been put on notice of its customers' telemarketing activities, but remained substantially involved in the placing of spam calls for Bay Area.

56.     Indeed, XenCall advertises a tool to "provide the ultimate in safe harbor protection from vexatious litigators."

57.     XenCall works with its customers to try to avoid calling numbers that, when they are in receipt of an illegal call, will file a lawsuit to vindicate their rights.

58.     XenCall didn't take reasonable steps to prevent unwanted and illegal calls, it instead offers a high-tech solution to reduce a caller's likelihood of getting sued for making those illegal calls.

## Class Action Allegations

59.     As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

60. The Class of persons Plaintiff proposes to represent is tentatively defined as:

All persons within the United States to whom: (a) Bay Area or XenCall, and/or a third party acting on their behalf, made one or more non-emergency telephone call; (b) that could have promoted Federal Insurance's products or services; (c) to their cellular telephone number; (d) using an artificial or prerecorded voice; (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

61. Excluded from the Class are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

62. The Class as defined above is identifiable through phone records and phone number databases.

63. The potential Class's members number at least in the thousands. Individual joinder of these persons is impracticable.

64. Plaintiff is a member of the Class.

65. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    a. Whether Defendant violated the TCPA by using prerecorded voice calls to contact putative class members cellular telephones;

    b. Whether Defendants placed calls without obtaining the recipients' prior express invitation or permission for the call;

    c. Whether Federal Insurance is vicariously liable for the telemarketing conduct of Bay Area Health; and

      d. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

66. Plaintiff's claims are typical of the claims of class members.

67. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

68. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

69. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

70. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**Legal Claims**

**Count One:
Violation of the TCPA's Automated Call Provisions**

71. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

72. The Defendants violated the TCPA by (a) initiating automated and/or artificial or pre-recorded voice telephone solicitations to cellular telephone numbers, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(b).

73. The Defendants' violations were willful and/or knowing.

74. Plaintiff and members of the Class also seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future.

### Relief Sought

WHEREFORE, for himself and the class, Plaintiff requests the following relief:

A. Injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future.

B. Because of Defendants' violations of the TCPA, Plaintiff Abramson seeks for himself and the other putative Class members $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

C. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls,

except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future.

D.	An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

E.	Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

DATED this 22nd day of April, 2020.

>	*/s/ Avi R. Kaufman*
>	Avi R. Kaufman (Trial Counsel)
>	Florida State Bar # 84382
>	Kaufman P.A.
>	400 NW 26th Street
>	Miami, FL 33127
>	Telephone: (305) 469-5881
>	Email: kaufman@kaufmanpa.com
>
>	*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, hereby certify that on April 22, 2020, I filed the foregoing with the Court's CM/ECF system, which served the same on the counsel of record.

>	*/s/ Avi R. Kaufman*
>	Avi R. Kaufman