## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| STEWART ABRAMSON, on behalf of himself and others similarly situated, | : : : | No. 8:19-cv-02523-TPB-AAS |
| Plaintiff, | : : : | |
| v. | : : : | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S** |
| FEDERAL INSURANCE COMPANY, 0995316 B.C. LTD. D/B/A XENCALL and BAY AREA HEALTH, LLC, | : : : : | **MOTION TO DISMISS, TO STRIKE, AND TO STAY** |
| Defendants. | : : : | |

_____/

The Court should deny Defendant Federal Insurance Company's motion to dismiss, to strike Plaintiff's class allegations, and to stay in all regards.

First, the Court has personal jurisdiction over Federal Insurance with respect to Plaintiff's Telephone Consumer Protection Act claims because this case arises directly from the business Federal conducts in the state of Florida – i.e., selling Federal insurance products to consumers in Florida through a network of Florida agents (like Defendant Bay Area Health, LLC). This is precisely what occurred here, a Federal Insurance approved insurance agent in Florida called Plaintiff in Florida to sell Plaintiff a Federal Insurance policy that was intended to provide coverage and be serviced by Federal in Florida. In fact, Federal impliedly contracted with a telemarketer in this District (Defendant Bay Area) to place calls on their behalf to generate insurance customers resulting in a TCPA violative call to Plaintiff in Florida. Under Florida's long arm statute, companies like Federal are subject to personal jurisdiction based on the tortious acts of their agents like Bay Area who engage in business on their behalf from this state.

Second, Plaintiff sufficiently alleges Federal Insurance's vicarious liability by alleging that Federal Insurance was involved in Bay Area's unsolicited calls. Plaintiff alleges that Bay Area expressly mentioned Federal Insurance by name; that Federal Insurance had the authority to provide feedback and other direction regarding Bay Area's calls; that Federal Insurance was or

1

should have been aware that Bay Area was using automated telemarketing, but did nothing to stop it; and, perhaps most importantly, that Bay Area was authorized and intending to bind Federal Insurance in insurance agreements with consumers that it contacted using prerecorded voice calls. These non-conclusory allegations are more than sufficient to plead vicarious liability based on all three common law theories of vicarious liability, and are, therefore, also sufficient to establish personal jurisdiction at this stage of the proceedings.

Third, the McCarran-Ferguson Act does not preempt Plaintiff's TCPA claim. Federal Insurance relies exclusively on Florida's Telemarketing Act as a basis for preemption, but Florida's Telemarketing Act neither regulates the business of insurance nor conflicts with the TCPA. Moreover, even if Florida's Telemarketing Act could be a potential basis for preemption defense under the McCarran-Ferguson Act, there is no basis for making that determination at the motion to dismiss stage based only on the allegations in Plaintiff's complaint.

Fourth, Plaintiff's class allegations should not be stricken because there is no basis to conclude from the face of the complaint that Plaintiff's proposed class cannot possibly be certified. To the contrary, TCPA classes are regularly certified in circumstances such as here, where the telemarketer has no relationship with (and therefore no valid consent defense as to) the plaintiff and putative class members. And the Eleventh Circuit's analysis of Article III standing in TCPA cases arising from unsolicited prerecorded calls supports the conclusion that this case is likely appropriate for class certification.

And last, the Court should deny Federal's request to stay the action pending the Supreme Court's decision in *Barr v. American Association of Political Consultants Inc.* for two reasons. First, under well-established Eleventh Circuit precedent, a grant of certiorari does not justify a stay of proceedings where Eleventh Circuit precedent is clear. Consistent with Eleventh Circuit precedent as to the severability of unconstitutional provisions of statutes, every district court in this Circuit to reach the issue the on appeal in *Barr* has concluded, as the Fourth Circuit did in the underlying case, that even if the government debt exception to the Telephone Consumer Protection Act is unconstitutional, the provision can be severed, and the remainder of the TCPA

2

remains in full force and effect.  Second, Federal fails to satisfy its burden to demonstrate that it will suffer hardship or inequity if this case is not stayed, and a stay will prejudice Plaintiff and the putative class.

The Court should therefore deny Federal's motion in total.

## BACKGROUND AND FACTS

The Plaintiff has brought this putative class action pursuant to the TCPA, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs.*, *LLC,* 132 S. Ct. 740, 745 (2012). Out of every 7,000,000 robocalls, there's only one TCPA lawsuit in federal court. *Compare* Herb Weisbaum, *It's Not Just You—Americans Received 30 Billion Robocalls Last Year*, NBC News (Jan. 17, 2018), https://www.nbcnews.com/business/consumer/it-s-not-just-you-americans-received-30-billion-robocalls-n838406 (30.5 billion robocalls); *with* WebRecon, *WebRecon Stats for Dec 2017 & Year in Review* (last visited Oct. 29, 2018), https://webrecon.com/webrecon-stats-for-dec-2017-year-in-review/ (4,392 TCPA complaints).

Here, the Plaintiff has alleged that Federal Insurance commissioned automated telemarketing cold calls to consumers with no relationship with Federal Insurance or Bay Area Health, and who had never consented to be called by them. *See* Amended Complaint (D.E. 47) at ¶¶ 2-3. These call were made pursuant to an arrangement (express or implied) between Federal Insurance and Bay Area Health, whereby Federal Insurance hired Bay Area Health to sell Federal Insurance insurance products using automated telemarketing cold calls, and Federal Insurance serviced the insurance agreements arising from that telemarketing. *Id.* at ¶¶ 11, 22-30, 43.  Federal Insurance could have, but did not, restrict Bay Area Health from using automated telemarketing.  *Id*. at ¶ 44.

Federal Insurance knew or should have known based, at a minimum, on prior complaints relating to the telemarketing of Federal Insurance insurance products that Bay Area Health was violating the TCPA on Federal Insurance's behalf.  *Id*. at ¶¶ 45-47.  In fact, the pre-recorded call came from the Caller ID number (205) 378-3964. *Id.* at ¶ 31. That Caller ID Number has been

associated with 532 calls on the website RoboKiller, earning it a "Negative" rating. *See* https://lookup.robokiller.com/p/205-378-3964 (Last Visited January 20, 2020). *Id.* at ¶ 32.  The website NoMoRobo identified it as the source of a "Health Insurance Scam.  *See* https://www.nomorobo.com/lookup/205-378-3964 (Last Visited January 20, 2020). *Id.* at ¶ 33. Notwithstanding, Federal Insurance did nothing to stop Bay Area Health's illegal telemarketing of Federal Insurance insurance products and instead accepted the benefits of Bay Area Health's TCPA violations.  *Id*.

As a result, Plaintiff asserts a single claim under the TCPA's prerecorded voice call provision on behalf of all recipients of Bay Area's unsolicited, telemarketing calls against Bay Area for making the prerecorded voice calls and against Federal Insurance for directing, apparently authorizing, and/or ratifying Bay Area's conduct.

## **ARGUMENT**

### A.  The Court has Personal Jurisdiction over Federal Insurance Because it is Present in Florida through its Agents' Issuance of Insurance Policies.

"Courts have consistently held that the TCPA protects a species of privacy interest in the sense of seclusion". *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1249 (10th Cir. 2006) (collecting cases); *see also* TCPA of 1991, Pub. L. No. 102-243, §2(9), (14) (recognizing the privacy rights implicated by unsolicited telemarketing practices). In fact, in the context of a jurisdictional motion, another Court in this District explicitly held that "TCPA violations are tortious acts". *See Keim v. ADF MidAtlantic, LLC*, 199 F. Supp. 3d 1362, 1367 (S.D. Fla. 2016) (collecting cases). Thus, the alleged sending of the pre-recorded call constitutes a tortious act.

This tortious act supplies a basis for the exercise of specific jurisdiction against Federal Insurance under §48.193(1)(a)(2), which has been interpreted to apply to a defendant's commission of tortious acts outside the state that cause injury inside the state. *See Posner v. Essex Ins. Co.,* 179 F.3d 1209 (11th Cir. 1999). Notably, this grant of personal jurisdiction specifically applies to tortious acts resulting from *telephone*, electronic or written

communications sent into the state – such as the illegal pre-recorded phone calls that are the subject of this lawsuit, and does not require an office or other additional physical presence in the state. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1333-55 (11th Cir. 2013); *Wendt v Horowitz,* 822 So.2d 1252 (Fla. 2002); *Crowe v. Paragon Relocation Resources, Inc.*, 506 F. Supp. 2d 1113, 1121 (N.D. Fla. 2007).

However, Federal Insurance Company does have a presence in this state, and even in this District, for purposes of writing insurance policies through agents, as they tried to do here. First, Federal Insurance Company has a regional office located at 3000 Bayport Drive, Suite 700 in Tampa, FL 33607. *See* https://www.chubb.com/us-en/agents-brokers/southeast-region.aspx (Last visited June 10, 2020). Furthermore, Federal Insurance Company has 50 agents within 100 miles of Tampa, Florida. *See* https://www.chubb.com/us-en/business-insurance/find-an-agent.aspx. (Last visited June 10, 2020). The fact that Federal Insurance Company is being sued for the acts of an agent attempting to bind them in contract should be no surprise.

Unlike the plaintiff in *Jessop v. Penn Nat'l Gaming, Inc*., No. 6:18-cv-1741-Orl-37DCI, 2019 U.S. Dist. LEXIS 185819 (M.D. Fla. Oct. 25, 2019), Mr. Abramson has not waived this argument as to Federal Insurance:

> Plaintiff, insisting on gambling jurisdiction on a single theory (agency), refuses to bite at the business activities argument, calling it a "red herring." (Doc. 92, p. 3.) Very well… The Court notes, however the business activities argument is a bit of a dark horse…Holding a license to do business in Florida is one of four factors courts look to when analyzing jurisdiction under the carrying-on-a-business provision of Florida's long-arm statute, the others being the presence and operation of an office in Florida, the number of clients served, and the percentage of overall [*8] revenue gleaned from Florida clients. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005). But Penn National is correct that the other factors weigh against a finding of specific jurisdiction. Penn National argues, and Plaintiff does not dispute, it does not have offices or serve a large number of clients in Florida and receives no revenue from Florida clients.

*Id.* at *7-8. As noted above, Federal Insurance agents hold at least 50 licenses in the Tampa area alone. Federal Insurance also has a regional office in Tampa, and presumably at least one office for each of their 50 agents. It would follow to reason that the number of clients served and

percentage of their overall revenue would be consistent with that. Of course, if necessary, this last factor (and the others) would be appropriate for jurisdictional discovery.

B.  **The Court has Personal Jurisdiction over Federal Insurance for Plaintiff's TCPA Claim Because Plaintiff Sufficiently Alleges Federal Insurance's Vicarious Liability for Bay Area's Call from Florida to Plaintiff in Florida.**

Under Florida's long arm jurisdiction statute, "A person, whether or not a citizen or resident of this state, who … ***through an agent***" "engag[es] in … business … in this state" "submits … to the jurisdiction of the courts of this state for any cause of action arising from" the business engaged in in Florida.  Fla. Stat. § 48.193(1)(a)(1) (emphasis supplied); *see Exceptional Urgent Care Ctr. I, Inc. v. ProtoMed Med. Mgmt. Corp.*, No. 5:08-cv-284-Oc-10GRJ, 2009 U.S. Dist. LEXIS 44787, at *22 (M.D. Fla. May 14, 2009) (finding that exercise of personal jurisdiction was appropriate where the defendant used a Florida agent to, among other things, "promote and market its products to prospective customers" and "solicit orders for products and enter into contracts to sell those products"). The TCPA allows for vicarious liability and allows for vicarious liability allegations to support a finding of personal jurisdiction. *See Johansen v. HomeAdvisor, Inc.*, No. 2:16-cv-121, 218 F. Supp. 3d 577 (S.D. Ohio Oct. 31, 2016) (finding that under the TCPA, a party may be subject to personal jurisdiction for the acts of its agent); *see In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (FCC 2013) (holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers").

This conduct subjecting a principal to personal jurisdiction in a state necessarily includes the conduct alleged here – *i.e.*, an agent making a TCPA violative call to a resident of the state. *See, e.g., Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 U.S. Dist. LEXIS 96847, at *11 (N.D. Cal. July 14, 2014) ("[W]here Shac intentionally sent text messages directly to cell phones with California based area codes, … Shac expressly aimed its conduct at California [and] … knew that the alleged harm caused by the text messages it sent to California cell phones was likely to

6

be suffered in California. Accordingly, the 'effects' test is satisfied, and Luna has met its burden of demonstrating that Shac purposefully directed its activity at the forum state.").

This is what Plaintiff has alleged here – that Federal Insurance is vicariously liable for Bay Area's call from Florida to Plaintiff in Florida.  The Court therefore has personal jurisdiction over Federal Insurance to the extent Plaintiff sufficiently alleges vicarious liability.[1]

"[A] party may be liable under the TCPA in accordance with tort-related vicarious liability rules," including actual authority, apparent authority, and ratification principles.[2]  *Klein v. Just Energy Grp., Inc.*, No. 14-1050, 2016 U.S. Dist. LEXIS 84447, at *27 (W.D. Pa. June 29, 2016) (citing *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016)); *see also Dish Network*, 28 FCC Rcd at 6588.  The existence of an agency relationship is normally one for the trier of fact to decide.  *See Ward v. Mgmt. Analysis Co. Emp. Disability Benefit Plan*, 135 F.3d 1276, 1283 (9th Cir. 1988), *rev'd in part on other grounds, UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358 (1999).

To survive a motion to dismiss, a plaintiff is required to allege a sufficient basis for any "one of the common law agency theories." *Cunningham v. Cap. Advance Sols., LLC*, No. 17-

---

[1] "In a motion to dismiss for lack of personal jurisdiction, a court must accept the facts alleged in plaintiff's complaint as true, to the extent that they are not contradicted by defendant's affidavits." *Kim v. Keenan*, 71 F. Supp. 2d 1228, 1231 (M.D. Fla. 1999) (citing *Cable/Home Commc'n Corp. v. Network Prods.*, 902 F.2d 829, 855 (11th Cir. 1990)).  While Federal Insurance submitted a three-paragraph affidavit claiming that they don't technically have a contract with Bay Area Health, Mr. Abramson's call confirmed that Mr. Paine, the owner of Bay Area, was the agent who identified in the solicitation calls for Federal Insurance policies, and who had the authority to act on Federal Insurance's behalf and bind Federal Insurance to insurance agreements with consumers.  And because the Court must determine the sufficiency of Plaintiff's vicarious liability allegations for purposes of Federal Insurance's arguments under Rule 12(b)(1), Plaintiff's response does not separately address Federal Insurance's vicarious liability under Rule 12(b)(6).

[2] Federal Insurance incorrectly relies on cases applying Florida agency law throughout its motion to dismiss. *See, e.g., Jessop v. Penn Nat'l Gaming, Inc.*, No. 6:18-cv-1741-Orl-37DCI, 2019 U.S. Dist. LEXIS 185819, at *9-14 (M.D. Fla. Oct. 25, 2019).  However, the sufficiency of Plaintiff's vicarious liability allegations must be determined under federal common law principles of agency, which are based on the Restatement (Third) of Agency and differ from Florida law. *See Dish Network,* 28 F.C.C. Rcd. at 6574.

13050 (FLW), 2018 U.S. Dist. LEXIS 197590, at *17-21 (D.N.J. Nov. 20, 2018).  A plaintiff must only "allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts."  *Mauer v. Am. Intercontinental Univ., Inc.*, 2016 U.S. Dist. LEXIS 120451, at *2 (N.D. Ill. Sep. 7, 2016).

For TCPA claims specifically, there is a low bar to pleading vicarious liability, as a plaintiff is not expected to allege "facts suggesting that" the defendant: (1) "instructed" the putative agent "to make the call to" the plaintiff, (2) "had any authority over the time, means and manner of" the putative agent's solicitations, or (3) "had the ability to issue instructions … on these subjects."  *Dolemba*, 213 F. Supp. 3d at 997 ("But Farmers does not suggest how Dolemba could reasonably be expected to know those facts at this stage in the litigation. Indeed, it is likely that all of the documents and information that establish (or refute) the details of the agency relationship between Farmers and the Lombardi Agency are exclusively within the Defendants' custody and control."); *see Cunningham*, 251 F. Supp. 3d at 1199 ("Cunningham has investigated the parties extensively, but inevitably some aspects of their relationships will only come to light in discovery.").

In this case, Plaintiffs plead robust facts giving rise to an inference that Federal Insurance is vicariously liable for Bay Area's prerecorded voice calls based on all three agency theories: actual agency, apparent agency, and ratification.

### 1.   Plaintiff Sufficiently Alleges Federal Insurance's Actual Authority Over Bay Area in Connection with Bay Area's Prerecorded Voice Calls.

"Actual authority is the authority that a principal expressly or implicitly gives an agent." *United States v. Martinez*, 613 F.2d 473, 481 (3d Cir. 1980); *see Cunningham*, 251 F. Supp. 3d at 1199 ("The question of whether implied authority may have existed would require the Court to know more about the course of the parties' dealings and the generally expected course of business in the field of security system marketing.").  An agent acts with actual authority if it "reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act."  Restatement (Third) of Agency § 2.01; *Kristensen v. Credit*

*Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014) (citing Restatement (Third) of Agency § 2.01)).

Actual agency "does not require the principal to specify the singular acts for which his or her authority exists as long as the acts are incidental to or reasonably necessary to accomplish what is authorized." *Harrington v. Roundpoint Mortg. Servicing Corp.*, No. 2:15-cv-322-FtM-38MRM, 2017 U.S. Dist. LEXIS 55023, at *21 (M.D. Fla. Apr. 10, 2017). "The concept of scope of authority is broad. An agent has authority to act to further the principal's objectives, as the agent reasonably understands the principal's manifestations and objectives. The principal is liable for the acts of the agent to further the principal's purposes unless the agent acts entirely for the agent's benefit only." *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 923 (C.D. Ill. 2017) (citing Restatement (Third) of Agency § 2.02(1)).

Thus, for a TCPA claim, a plaintiff sufficiently pleads that a defendant directed an agent's calls by alleging that the caller "expressly mentioned" the defendant "by name"; that the defendant had the authority to provide feedback regarding calls; that the defendant was "aware" that TCPA restricted technology was being used to make calls; and/or other facts giving rise to an inference that the defendant was "involved" in the "sales practices and marketing procedures." *United States*, 256 F. Supp. at 922-923 ("The fact that Dish may rarely have exercised these indicia of authority to control does not matter. The issue for purposes of agency analysis is the existence of the authority, not the actual use of the authority."); *Dolemba*, 213 F. Supp. 3d at 997 ("Of course, these facts may not be sufficient to prove any theory of vicarious liability. They are more than sufficient, however, to entitle Dolemba to further discovery.").

Here, Plaintiff alleges, and Federal Insurance does not rebut by affidavit, that Federal Insurance was involved in Bay Area's unsolicited calls, including Bay Area's call from Florida to Plaintiff in Florida. Plaintiff alleges that Bay Area expressly mentioned Federal Insurance by name; that Federal Insurance had the authority to provide feedback and other direction regarding Bay Area's calls; that Federal Insurance was or should have been aware that Bay Area was using automated telemarketing, but did nothing to stop it; and that Bay Area was authorized and

intending to bind Federal Insurance in insurance agreements with consumers that it contacted using prerecorded voice calls.  Amended Complaint (D.E. 47) at ¶¶ 11, 38-48.  These non-conclusory allegations are more than sufficient to plead vicarious liability based on an actual authority theory and to put Federal Insurance on notice of the basis for Plaintiff's claim against it.

### 2.   Plaintiff Sufficiently Alleges Federal Insurances' Apparent Authority Over and Ratification of Bay Area's Prerecorded Voice Calls.

Apparent authority "arises when a third-party reasonably believes that the [] agent had authority to act on behalf of the principal and that belief can be traced to the principal's own manifestations."  *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1167–68 (D. Idaho 2011); *see also Hossfeld v. Gov't Employees Ins. Co.*, 88 F. Supp. 3d 504, 510-11 (D. Md. Feb. 25, 2015) (citing *Kristensen*, 12 F. Supp. 3d at 1302, and concluding that "apparent authority" is "based on a reasonable person's perception of who authorized [making the call]").

"To provide guidance in this area," the FCC has provided "illustrative examples of evidence that may demonstrate that the telemarketer is the seller's authorized representative with apparent authority," including "the authority to use the seller's trade name, trademark and service mark"; and "if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct." *Dish Network*, 28 F.C.C. Rcd. at 6592 ("At a minimum, evidence of these kinds of relationships ... should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent").

"Ratification occurs when a principal knowingly chooses to accept the benefits of unauthorized actions an agent takes on the principal's behalf." *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 833 (N.D. Ill. 2016); Restatement (Third) of Agency § 4.01(1) (2006) cmt. d. ("Ratification does not require a pre-existing formal agency relationship."); *see Dish Network* 28 F.C.C. Rcd. at 6584. "[R]atification may create a relationship of agency when none

existed between the actor and the ratifier at the time of the act.  It is necessary that the actor have acted or purported to act on behalf of the ratifier."  Restatement (Third) of Agency § 4.01 cmt. b; *see Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1075 (9th Cir. 2019) (citing the Restatement and holding in a TCPA action that "ratification may create an agency relationship when none existed before the acts are 'done by an actor … who is not an agent but pretends to be.'").

To sufficiently plead ratification, a plaintiff must allege that a principal had full knowledge of all the facts, *or* was willfully ignorant of those facts, and manifested an intention to ratify the act in question, or that an agent acted for a principal's benefit and the principal "fail[ed] to object or repudiate an action."  *Henderson*, 918 F.3d at 1074-75; *Aranda*, 179 F. Supp. 3d at 831.

Here, Plaintiff sufficiently pleads Federal Insurance's vicarious liability predicated on apparent authority and ratification theories based on the same allegations supporting an actual authority theory for purposes of establishing personal liability, including that Bay Area identified itself as having called on behalf of Federal Insurance; that Federal Insurance had authority over the means and content of calls; that Federal Insurance was aware that TCPA violative calls were being made but did nothing to stop them, and, in fact, accepted the benefits of and serviced the insurance agreements resulting from these calls; and that Bay Area was authorized by Federal Insurance to bind it in contract with consumers Bay Area telemarketed to.  Amended Complaint (D.E. 47) at ¶¶ 11, 38-48.

### C.  Exercising Personal Jurisdiction Over Federal Insurance for Plaintiff Abramson's TCPA Claims is Consistent with the Due Process Clause.

Exercising personal jurisdiction over Federal Insurance with respect to Plaintiff Abramson's TCPA claims is consistent with the Due Process Clause based on the agency relationship between Federal Insurance, on the one hand, and Bay Area, on the other, and the fact that Bay Area called Plaintiff in Florida.  "To determine whether exercising specific personal jurisdiction comports with due process, courts employ a three-part test, which examines:  (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with

the forum [('Relatedness Prong')]; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws [('Purposeful Availment Prong')]; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice [('Fair Play Prong')]." *Tickling Keys, Inc. v. Tra43nsamerica Fin. Advisors, Inc*., 305 F. Supp. 3d 1342, 1349 (M.D. Fla. 2018) (citing *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013)).

Here, Plaintiff Abramson's claims satisfy the Relatedness Prong because there is a "'direct causal relationship between the defendant, the forum, and the litigation'"; *i.e.*, Federal Insurance expressly or implicitly contracted with Bay Area's owner to place telemarketing calls from Florida on their behalf and Plaintiff Abramson's claim arises from a call placed to him by Bay Area from Florida on Federal Insurance's behalf and into Florida. *Id*. at 1349 (citing *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010)).

Plaintiff Abramson's claims satisfy the Purposeful Availment Prong because Federal Insurance's contacts with Florida – *i.e.*, contracting with Bay Area to place telemarketing calls on their behalf from Florida including to Plaintiff Abramson in Florida – "are related to the [P]laintiff's cause of action," "involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum," and "are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357. A company that hires a telemarketer to engage in cold calling on its behalf cannot reasonably be surprised that it may be required to defend itself against a TCPA claim in the forum from which its telemarketer made calls on its behalf, particularly when the calls are made to consumers like Plaintiff who reside in that same forum. *See Luna*, 2014 U.S. Dist. LEXIS 96847, at *11 ("[W]here Shac intentionally sent text messages directly to cell phones with California based area codes, … Shac expressly aimed its conduct at California [and] … knew that the alleged harm caused by the text messages it sent to California cell phones was likely to

be suffered in California. Accordingly, the 'effects' test is satisfied, and Luna has met its burden of demonstrating that Shac purposefully directed its activity at the forum state.").

Plaintiff Abramson's claims satisfy the Fair Play Prong because "there is no indication that adjudicating this case in Florida would be unconstitutionally burdensome" because Federal Insurance have contracted with a Florida telemarketer to engage in a telemarketing campaign on their behalf from Florida,. *Ticking Keys*, 305 F. Supp. 3d at 1350; *cf. Estate of Fraser v. Smith*, No. 04-22191-CIV-JORDAN, 2007 U.S. Dist. LEXIS 96842, at *27 (S.D. Fla. Nov. 13, 2007) (cited in Motion at p. 11) (in dicta, finding that the exercise of personal jurisdiction would not satisfy the Fair Play Prong where the "cause of action … did not arise in Florida, nor from conduct that occurred in Florida (between plaintiffs who are not Florida citizens and a defendant who is not a Florida citizen and who does not have a substantial and continuous presence in Florida)"). Under the circumstances here, Florida has an interest in adjudicating Plaintiff Abramson's claims arising from tortious calls made by Federal Insurance's agent from Florida to Plaintiff in Florida, particularly because Plaintiff Abramson's choice of forum is entitled to deference. *Burger King Corp. v. Rudzewicz*, 471 U.S. at 473, 478 (1985) ("parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities"); *see Tickling Keys*, 305 F. Supp. 3d at 1350 (identifying factors relevant to the Fair Play Prong).

Exercise of personal jurisdiction over Federal Insurance for Plaintiff Abramson's claims therefore comports with the Due Process Clause.

### D.  The McCarran-Ferguson Act Does Not Bar the Application of the TCPA.

Under the McCarran-Ferguson Act, a state statute preempts a federal statute only if (1) "the federal law does not specifically relate to insurance"; (2) the purpose of the state law is to regulate the business of insurance; and (3) "the application of federal law to the case might invalidate, impair, or supersede the state law." *Ojo v. Farmers Group, Inc.*, 600 F.3d 1201, 1203 (9th Cir. 2010). Here, while the TCPA is a federal law that does not specifically relate to

insurance, Florida's Telemarketing Act – the only state law Federal Insurance has identified in its motion – is neither for the purpose of regulating the business of insurance nor in conflict with the TCPA.  Moreover, preemption is an affirmative defense as to which Federal Insurance bears the burden, and there is no basis on the face of Plaintiff's complaint to find preemption based on Florida's Telemarketing Act which exempts "licensed" insurance solicitors to solicit within the scope of their license because there is no allegation in the complaint that any defendant was a licensed insurance solicitor or that their solicitation of Plaintiff was within the scope of their license.

First, Florida's Telemarketing Act's express "Purpose" is "to promote the general welfare of the public and the integrity of the telemarketing industry," not to regulate the business of insurance.  Fla. Stat. § 501.602.  In fact, instead of *regulating* the business of insurance, it expressly *exempts* insurance businesses from its purview.  *Id*. at § 50.604(8); *compare* Merriam-Webster Dictionary definition of "regulate," which means "to govern or direct according to rule," *with* definition of "exempt," which means "free or released from some liability or requirement to which others are subject" (both available at: https://www.merriam-webster.com/dictionary/; last accessed June 10, 2020).  Florida's Telemarketing Act is therefore not for the purpose of regulating the business of insurance.  *See Cochran v. Paco, Inc.*, 606 F.2d 460, 466 (5th Cir. 1979) (holding that (1) "the key factor is the relationship between the insurer and the insured, and statutes 'aimed at protecting or regulating this relationship, directly or indirectly are laws regulating the *business of insurance*,'" and (2) that "[t]he McCarran Act is to be 'narrowly construed in the face of valid federal regulatory interests'").

Second, Florida's Telemarketing Act is primarily a licensing statute that does not address the conduct at issue in this case – i.e., unsolicited prerecorded voice calls.  *See* Fla. Stat. § 501.607, *et seq*. (addressing "Licensure of salespersons"); *Id*. at § 501.616 (identifying seven discrete "Unlawful acts and practices" that do not include making calls using a prerecorded voice); *cf.* 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting unsolicited prerecorded voice calls to cell phone numbers).  "Because [Florida] insurance law remains silent on the issue of insurer liability

14

as related to [prerecorded voice] electronic communications absent the recipient's consent, the TCPA appears to complement, rather than 'impair' [the state] law." *See Flores v. Access Ins. Co.*, No. 2:15-cv-02883-CAS(AGRx), 2017 U.S. Dist. LEXIS 36486, at *16 (C.D. Cal. Mar. 13, 2017).  Similarly, even if Florida's Telemarketing Act exempts insurance businesses, it expressly declared the Florida legislature's intent that "No provision in [Florida's Telemarketing Act] shall be construed to limit any right or remedy provided under law" to consumers to obtain redress for otherwise illegal telemarketing conduct.  Fla. Stat. § 501.625.  The application of the TCPA to Plaintiff's claims therefore will not create the possibility of a conflict with Florida's Telemarketing Act.

Third, even if state law preemption based on Florida's Telemarketing Act is a potentially viable defense to Plaintiff's claim, preemption is an affirmative defense as to which Federal Insurance bears the burden.  *See Kennan v. Dow Chem. Co.*, 717 F. Supp. 799, 808 (M.D. Fla. 1989) ("Where a defense does not tend to controvert an element of plaintiff's prima facie case, where the defense tends to annul the cause of action and not merely provide a different legal standard, and where failure to plead the defense would tend to surprise a plaintiff, the defense must be considered an affirmative defense.").  Here, there is basis to conclude that the exemption to Florida's Telemarketing Act for "licensed" insurance solicitors to solicit within the scope of their license because applies because there is no allegation in the complaint that any defendant was a licensed insurance solicitor or that their solicitation of Plaintiff was within the scope of their license.  Therefore, at a minimum, resolution of Federal Insurance's preemption defense would be premature at this stage of the proceedings.

The McCarran Ferguson Act therefore does not bar Plaintiff's claim.

### E.  Federal Insurance has Not Satisfied Its Burden to Establish that Plaintiff's Class Allegations Should be Stricken at the Pleadings Stage.

In moving to strike class allegations, a defendant "ha[s] the burden of demonstrating from the face of plaintiffs' complaint that it will be impossible to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove." *Romano v. Motorola, Inc.*,

2007 U.S. Dist. LEXIS 86472, * 7 (S.D. Fla. Nov. 26, 2007) (internal citation omitted).  This is because defendants are asking the court to "preemptively terminate the class aspects of this litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery for which they would otherwise be entitled on questions relevant to class certification." *Id*.

The Eleventh Circuit has cautioned that "pleadings alone are often not sufficient to establish whether class certification is proper, and the district court will need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008) (reversing district court's striking of class allegations, explaining that "the district court's conclusion as to the predominance issue at the complaint stage was speculative at best and premature at least"). The Eleventh Circuit reiterated the high standard and limited circumstances under which it is appropriate to strike class allegations at the pleading stage in *Herrera v. JFK Med. Ctr., Ltd. P'ship*, 648 F. App'x 930, 934 (11th Cir. 2016):

> The Supreme Court has emphasized that class certification is an evidentiary issue, and "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013) (internal quotation marks omitted). In fact, "the determination usually should be predicated on more information than the complaint itself affords. The court may, and often does, permit discovery relating to the issues involved in maintainability, and a preliminary evidentiary hearing may be appropriate or essential." *Huff v. N.D. Cass Co. of Ala.*, 485 F.2d 710, 713 (5th Cir. 1973) (en banc) (internal citation and footnote omitted). After all, "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2552, 180 L. Ed. 2d 374 (2011) (internal quotation marks omitted).

*Id.* (the district "court erred in finding that, as a matter of law, class treatment was inappropriate based on the face of Plaintiffs' complaint").

Accordingly, motions to strike class allegations are rarely granted prior to briefing on class certification "due to the prematurity of such motions." *Burke v. Credit One Bank, N.A.*,

2019 U.S. Dist. LEXIS 62770, *6 (M.D. Fla. Feb. 5, 2019); *Wijesinha v. S. Fla. MGS, LLC*, 387 F. Supp. 3d 1412, 1415-16 (S.D. Fla. June 4, 2019) ("The Court will address arguments regarding the appropriateness of the class definition at the class certification stage.").

This is particularly true in TCPA cases, such as this one, involving allegations of unsolicited and unconsented-to calls.  Numerous courts have granted class certification in similar TCPA cases, finding that consent is a common issue for the class. *See e.g., Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 332 (W.D. Okla. October 15, 2018) ("consent may be a common question in cases, such as this one, in which evidence shows defendants had no prior relationship with class members"). While Federal Insurance claims that the Plaintiff's proposed class definition is an impermissible "fail safe" class, the class definition does not affirmatively plead out valid defenses to the claim, such as consent.

Similarly, the Eleventh Circuit recently held that when, as here, the plaintiff's and class members' Article III standing is predicated upon the receipt of an unsolicited, prerecorded call, the existence of Article III standing can be determined on a class wide basis. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019) ("As we recognized in *Salcedo*, a phone call intrudes upon the seclusion of the home, fully occupies the recipient's device for a period of time, and demands the recipient's immediate attention. While those injuries might not be significant in the grand scheme of things, they are sufficiently concrete and particularized for Article III standing. This is enough to establish the injury in fact prong of standing for Cordoba and all of the absent class members who received calls from Telecel.").

Notwithstanding, even if Federal Insurance could establish that the precise class proposed in the complaint cannot possibly be certified (they can't), the "more appropriate remedy for curing Plaintiff's class definition—if it proves necessary—will be to require Plaintiff to amend the definition at the class certification stage." *Soular v. Northern Tier Energy LP*, 2015 U.S. Dist. LEXIS 112294, *23 (D. Minn. Aug. 25, 2015); *see also Prado-Steiman v. Bush*, 221 F.3d 1266, 1273 (11th Cir. 2000) ("Rule 23(c)(1) specifically empowers district courts to alter or amend class certification orders at *any* time prior to a decision on the merits. That power is

17

critical, because the scope and contour of a class may change radically as discovery progresses and more information is gathered about the nature of the putative class members' claims").

In fact, although Federal Insurance relies on *Canary v. Youngevity Int'l, Inc.,* No. 5:18-cv-03261-EJD, 2019 U.S. Dist. LEXIS 46429, at *24 (N.D. Cal. Mar. 20, 2019) for the proposition that the Plaintiff's class allegations should be stricken, the only analysis given in that case for the class definition related to the fact that the Plaintiff had not established a claim for violation of the TCPA, and the court granted "leave to amend." *See id.* ("Because Canary has not sufficiently alleged a violation of the TCPA, the motion to strike will be granted.").

Ultimately, if Defendant's argument is adopted, no TCPA action could proceed to discovery as a putative class action if the defendant vaguely alluded to a possible consent defense at the start of the litigation. But this is simply not the case – "Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); *see also Chapman v. Wagener Equities, Inc.*, No. 09-c-07299, 2014 WL 540250, at *15, n. 11 (N.D. Ill. 2014), *leave to appeal denied* 747 F.3d 489 (7th Cir. 2014) (Posner, J.) (discussing "the many cases decided during and since 2011 in which TCPA classes have been certified"). There is therefore no basis for determining at this stage that Plaintiff is not entitled to further discovery relating to potential certification of the proposed class of prerecorded voice call recipients.

### F. A Stay is Unwarranted and Would be Prejudicial to Plaintiff and the Class.

The Court should deny Federal Insurance's request to stay the action pending the Supreme Court's decision in *Barr v. American Association of Political Consultants Inc.* for two reasons.

#### 1. The Grant of Certiorari in *Barr* Does Not Support a Stay Here.

"[G]rants of certiorari do not themselves change the law, and must not be used by courts as a basis to grant relief that would otherwise be denied." *In re Bradford*, 830 F.3d 1273, 1275 (11th Cir. 2016). The Eleventh Circuit has repeatedly held that the Supreme Court's grant of certiorari to consider a legal question does not indicate that a change in the law is forthcoming and therefore does not merit a stay of litigation in actions in which that question may arise. *E.g.,*

*U.S. v. Smith*, 752 F. App'x 867, 869 (11th Cir. 2018) ("Until the Supreme Court issues a decision that actually changes the law, we are duty-bound to apply this Court's precedent[.]").

In *Barr*, the Fourth Circuit held that the government debt collection exception to the TCPA's automated calls provision is severable if unconstitutional and that the remainder of the TCPA, including the automated calls provision, remains in effect. *Am. Ass'n of Political Consultants v. FCC*, 923 F.3d 159 (4th Cir. 2019). Courts in this district have universally reached the same conclusion based on well-established Eleventh Circuit precedent. *E.g., Sliwa v. Bright House Networks, LLC*, No. 2:16-cv-235-FtM-29MRM, 2018 U.S. Dist. LEXIS 84707, at *5 (M.D. Fla. May 21, 2018); *see Grigorian v. Tixe Realty Servs.*, No. 19-81106-CIV, 2019 U.S. Dist. LEXIS 198963, at *3 (S.D. Fla. Nov. 18, 2019); *Wijesinha v. Bluegreen Vacations Unlimited, Inc.*, No. 19-20073-CIV, 2019 U.S. Dist. LEXIS 57136, at *13 (S.D. Fla. Apr. 3, 2019).

This is because, among other reasons, the Communications Act (U.S. Code Title 47, Chapter 5, of which the TCPA is a part) includes an express "Separability" provision:

> If any provision of this chapter or the application thereof to any person or circumstance is held invalid, the remainder of the chapter and the application of such provision to other persons or circumstances shall not be affected thereby.

47 U.S.C. § 608 (referring to Chapter 5, of which the TCPA is a part); *see Reno v. ACLU*, 117 S. Ct. 2329, 2350 (1997) (considering the constitutionality of 47 U.S.C. § 223 and holding that "we will follow § 608's guidance by leaving constitutional textual elements of the statute intact in the one place where they are, in fact, severable"). "[T]here can be no doubt that Congress would have enacted the remainder of the anti-robocall provision, irrespective of the constitutional fate of the Government-Debt Exception; Congress did enact the provision prior to adding that clause. … [I]n light of the severability of the Government-Debt Exception — a finding that the anti-robocall provision is unconstitutional would have no effect on [defendant's] exposure to liability under the TCPA." *Sliwa*, 2018 U.S. Dist. LEXIS 52509, at *14-15.

Therefore, notwithstanding the grant of certiorari in *Barr*, unless and until the Supreme Court issues a decision that actually changes the law, the Court is duty-bound to apply existing

precedent if required to evaluate the constitutionality of the TCPA based on the government debt collection exception.  A stay pending the Supreme Court's decision in *Barr* is therefore not warranted, and the Court should deny Federal's motion to stay.

### 2. Federal Fails to Satisfy its Burden to Demonstrate Prejudice Absent a Stay, and Plaintiff and the Putative Class Will be Prejudiced by a Stay.

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citations omitted).  The proponent "must make out a clear case of hardship or inequity in being required to go forward[.]" *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).  Federal has not met that burden here, and, in fact, fails to set forth any hardship or inequity that it will suffer if the case goes forward, much less "a clear case." *See* Motion (D.E. 56) at pp. 24-25 (identifying efficiency as the sole basis for requesting a stay); *Strougo v. Barclays PLC*, 194 F. Supp. 3d 230, 234 (S.D.N.Y. 2016) ("plaintiffs have a strong interest in being fully compensated for their losses as soon as possible"); *United States v. Swissco Properties within S. Dist.*, 821 F. Supp. 1472, 1475 (S.D. Fla. 1993) ("justice delayed is justice denied")*.*

This case is still in its early stages, meaning Plaintiff has not yet obtained much of the discovery he needs. A stay compounds the already-substantial difficulty of gathering this information because over time relevant employees leave, class members die or move, documents or data are lost or corrupted, and memories fade. *See Young v. Peraza*, No. 15-60968-CIV-COHN/SELTZER, 2015 WL 4639736, at *2 (S.D. Fla. Aug. 4, 2015) ("Plaintiff would stand to suffer prejudice as the memories of eyewitnesses faded with the passage of time."); *Koppelman v. Galt Ocean Manor Condo. Ass'n, Inc.*, No. 16-CV-62175, 2016 WL 6777896, at *1 (S.D. Fla. Nov. 16, 2016) ("when discovery is delayed or prolonged it can create case management problems").

For this reason alone, the Court should deny Federal's motion to stay.

### CONCLUSION

Based on the foregoing, the Court should deny Federal Insurance's motion to dismiss, to strike, and to stay on all bases.

Dated: June 10, 2020

*/s/ Avi R. Kaufman*
Avi R. Kaufman (Trial Counsel)
Florida State Bar # 84382
Kaufman P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
Email: kaufman@kaufmanpa.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I, hereby certify that on June 10, 2020, I filed the foregoing with the Court's CM/ECF system, which served the same on the counsel of record.

*/s/ Avi R. Kaufman*
Avi R. Kaufman