## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| STEWART ABRAMSON, on behalf of himself and others similarly situated, | : : : | No. 8:19-cv-02523-TPB-AAS |
| Plaintiff, | : : : | |
| v. | : : : | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT** |
| FEDERAL INSURANCE COMPANY, 0995316 B.C. LTD. D/B/A XENCALL and BAY AREA HEALTH, LLC, | : : : : | **FEDERAL INSURANCE COMPANY'S MOTION TO DISMISS** |
| Defendants. | : : : | |
| _____/ | | |

## I.     INTRODUCTION

Plaintiff Stewart Abramson sued Defendant Federal Insurance Company, for violations of section 227(b)(1) of the Telephone Consumer Protection Act which prohibits unwanted pre-recorded calls to cellular phone numbers. Federal Insurance moves to dismiss Plaintiff's Amended Complaint, arguing that Plaintiff's claims should be dismissed for lack of subject matter jurisdiction. Specifically, Federal Insurance argues that the Supreme Court's holding in *Barr v. American Association of Political Consultants, Inc.*, that "the 2015 government-debt exception created an unconstitutional exception to the 1991 robocall restriction," 140 S. Ct. 2335, 2348 (2020), rendered the entire robocall restriction unenforceable for the time the government-debt exception was in effect. In essence, Federal Insurance contends that it is as if the 1991 robocall ban did not exist between 2015 and 2020, eliminating all liability for robocalls made in the last five years.

Defendant's motion must be denied. In *AAPC*, the Supreme Court applied longstanding severability principles to conclude that "the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government debt-exception must be invalidated and severed from the remainder of the statute." *Id.* at 2343. Seven Justices concurred in the severability discussion, which made clear that while "no one should be penalized or held liable for making robocalls to collect government debt" between 2015 and 2020, "our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *Id.* at 2355 n.12. This mandate is consistent with well-established severability law and has been followed by the majority of courts. Defendant urges the Court to ignore this mandate and instead adopt the reasoning of the two district courts that misconstrued *AAPC*.

To be clear, Defendant is not being sued for placing calls to collect government debt that they thought were exempted from the TCPA. As stated in Justice Kavanaugh's plurality opinion, "[c]onstitutional litigation is not a game of gotcha against Congress, where litigants can ride a discrete constitutional flaw in a statute to take down the whole, otherwise constitutional statute." *AAPC*, 140 S. Ct. at 2351. That is precisely what Defendant seeks to accomplish with its motion, and the Court should decline Defendant's invitation to ignore binding Supreme Court precedent. Plaintiff requests that the Court deny Defendant's motion.

## II.    *BARR V. AAPC*

In *Barr v. AAPC*, political consultants who wanted to make political outreach robocalls brought a declaratory judgment action against the United States Attorney General

and Federal Communications Commission, claiming that the TCPA's prohibition on robocalls violated the First Amendment. In 1991, the TCPA amended the Communications Act by adding the robocall restriction, codified at § 227(b)(1)(A)(iii), banning calls made using an artificial telephone dialing system or artificial or prerecorded voice to cell phones. *AAPC*, 140 S. Ct. at 2352. Between 1991 and 2015, the TCPA's prohibition on the use of autodialers and prerecorded messages to call cell phones operated without any constitutional issue. *Id*. at 2353 ("Indeed, the remainder of the robocall restriction did function independently and fully operate as a law for 20-plus years before the government-debt exception was added in 2015."). In 2015, "Congress carved out a new government-debt exception to the general robocall restriction." *Id.* at 2345. The plaintiffs in *AAPC* argued that the 2015 government-debt exception transformed the robocall prohibition into a content-based speech regulation in violation of the First Amendment. *Id.*

The district court held that the government-debt exception survived strict scrutiny. *Id.* The Fourth Circuit reversed but, rather than invalidate the entire statute, "invalidated the government-debt exception and severed it from the robocall restriction." *Id.* The plaintiffs and the government petitioned for a writ of certiorari. The plaintiffs argued that the Fourth Circuit "did not go far enough in providing relief and should have invalidated the entire 1991 robocall restriction rather than simply invalidating the 2015 government-debt exception." *Id.* at 2346.

The Supreme Court granted certiorari and issued its decision on July 6, 2020. While there is no majority opinion of the Court, six Justices concluded that Congress, in passing the

government-debt exception, "impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment." *Id.* at 2343. Seven Justices, applying severability principles, concluded that "the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government debt-exception must be invalidated and severed from the remainder of the statute." *Id.*[1] "As a result, plaintiffs still may not make political robocalls to cell phones, but their speech is now treated equally with debt-collection speech." *Id.* at 2344.

Justice Kavanaugh's plurality opinion, which was joined by Justices Robert and Alito, provides the only significant analysis on the issue of severability. *Id.* at 2352-55. Four additional Justices concurred in the judgment with respect to severability. *Id.* at 2341, 2357, 2363. In deciding that the government-debt exception was severable from the remainder of the statute, Justice Kavanaugh relied on the Communication Act's severability clause, codified at 47 U.S.C. § 608, as well as traditional principles governing severability. *Id.* at 2352. He noted that "the remainder of the robocall restriction did function independently and fully operate as a law for 20-plus years before the government-debt exception was added in 2015," and that, in the past, when Congress has added an unconstitutional amendment to a

---

[1] Justice Kavanaugh announced the judgment of the Court in a plurality opinion which Chief Justice Roberts and Justice Alito joined in whole, and which Justice Thomas joined in part. *AAPC*, 140 S. Ct. at 2343-56. Justice Sotomayor concurred in the judgment but would have applied intermediate scrutiny. *Id.* at 2356-57. Justice Breyer, joined by Justices Ginsburg and Kagan, concurred in the judgment with respect to severability, but dissented as to the plurality's holding that the government-debt exception violates the First Amendment. *Id.* at 2357-63. And Justice Gorsuch issued a final opinion, in which he concurred in the judgment in part and dissented on other grounds, and in which Justice Thomas joined in part. *Id.* at 2363-67.

prior law, the Court "has treated the original, pre-amendment statute as the 'valid expression of the legislative intent.'" *Id.* at 2353. Most importantly, in a footnote at the end of his section on severability, Justice Kavanaugh makes it clear that "no one should be penalized or held liable for making robocalls to collect government debt" between 2015 and 2020, but "[o]n the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *Id.* at 2355 n.12.

### III.   AUTHORITY AND ARGUMENT

As discussed below, Defendant has not established any basis for the Court to dismiss this action. Defendant's contention that the automated call ban was invalid during the putative class period rests on an incorrect reading of *AAPC* and should be rejected.

#### A.  The Supreme Court invalidated only the government-debt exception, not the robocall prohibition in its entirety.

The subject of the Supreme Court's First Amendment analysis in *AAPC* was the government-debt exception—not section 227(b)(1)(A)(iii)'s entire prohibition on robocalls to cell phones. The Court reasoned that the "justification for the *government-debt exception* is collecting government debt" and that, while the exception represents a "worthy goal," it does not pass strict scrutiny. *AAPC*, 140 S. Ct. at 2347 (emphasis added). The Court rejected the argument that the entire robocall provision, section 227(b)(1)(A)(iii), was unconstitutional and invalid in its entirety. The Court "disagreed with plaintiffs' … argument for holding the entire 1991 robocall restriction unconstitutional" and held only "that *the 2015 government-debt exception* created an unconstitutional *exception* to the 1991 robocall restriction." *Id.* at 2349 (emphasis added).

5

In a separate opinion, Justices Gorsuch and Thomas, concurring in the judgment in part and dissenting in part, took aim at the entire robocall ban. They reasoned that the justification for the robocall ban (not the government-debt exception) failed strict scrutiny and concluded that "the challenged robocall ban unconstitutionally infringed on [plaintiffs'] speech." *See id.* at 2364-65. But Justice Kavanaugh's three-Justice plurality opinion, holding that only the government-debt exception unconstitutional, is controlling because it rests on narrower grounds. Under *Marks v. United States*, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds ....'" 430 U.S. 188, 193 (1977) (ellipsis in original) (citations omitted). "[A]n opinion will be the narrowest under *Marks* if the instances in which it would reach the same result in future cases form 'a logical subset' of the instances in which the other opinion would reach the same result." *EMW Women's Surgical Center, P.S.C. v. Friedlander*, 978 F.3d 418, 431 (6th Cir. 2020) (citation omitted). Thus, Justice Kavanaugh's plurality opinion holding only the government-debt exception to the provision prohibiting robocalls to cell phones unconstitutional is the holding of the Court.

**B. The TCPA's ban on pre-severance robocalls remains intact.**

A seven-Justice majority of the Court concluded that it could sever the unconstitutional exception from the robocall prohibition and "that the entire 1991 robocall restriction should not be invalidated." *AAPC*, 140 S. Ct. at 2343. The Court noted the "strong presumption of severability" as the "normal rule." *Id.* at 2350 (quoting *Free Ent. Fund v.*

*Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 508 (2010)). In addition, the

Communications Act has "an express severability clause," *id.* at 2352 (citing 47 U.S.C. §

608), and "absent extraordinary circumstances, the Court should adhere to the text of the

severability or nonseverability clause." *Id.* at 2349. The Court also cited longstanding

precedent on severability in which "[t]he Court has severed the 'exception introduced by

amendment,' so that 'the original law stands without the amendatory exception.'" *Id.* at 2353

(quoting *Truax v. Corrigan*, 257 U. S. 312, 342 (1921)). In other words, "the Court has

treated the original, pre-amendment statute as the 'valid expression of the legislative intent.'"

*Id.* (quoting *Frost v. Corporation Comm'n of Oklahoma*, 278 U.S. 515, 526–527 (1929)).

The purpose of severing a clause, provision, or section of a statute is to draw a line

between what is unconstitutional and what is not, so that courts "salvage rather than destroy

the rest of the law passed by Congress and signed by the President." *Id.* at 2350; *see also*

*Dorchy v. Kansas*, 264 U.S. 286, 289-90 (1924) ("A statute bad in part is not necessarily void

in its entirety."). As Justice Kavanaugh explained,

> If courts had broad license to invalidate more than just the offending
> provision, a reviewing court would have to consider what other
> provisions to invalidate: the whole section, the chapter, the statute, the
> public law, or something else altogether. Courts would be largely at sea
> in making that determination, and usually could not do it in a principled
> way. Here, for example, would a court invalidate all or part of the
> Bipartisan Budget Act of 2015 rather than all or part of the 1991 TCPA?
> After all, that 2015 Bipartisan Budget Act, not the 1991 TCPA, added
> the constitutionally problematic government-debt exception. That is the
> kind of free-wheeling policy question that the Court's presumption of
> severability avoids.

*AAPC*, 140 S. Ct. at 2351 n.7. Thus, if severed and invalidated, "an unconstitutional statutory amendment 'is a nullity' and 'void' *when enacted*, and for that reason has *no effect on the original statute*." *Id*. at 2353 (quoting *Frost,* 278 U.S. at 526 (emphasis added)). Once severed, it is as if the amendment was never passed by Congress; the legal effect of a severed amendment is, therefore, necessarily retroactive.

The seven-Justice majority held that the legal effect of severing the government-debt exception is retroactive. The severability discussion concludes, "In short, the correct result in this case is to sever the 2015 government-debt exception and leave in place the longstanding robocall restriction." *AAPC*, 140 S. Ct. at 2355. Then, in a footnote, the Court explained that its decision impacted only robocalls that were made to collect government debt after the exception was added in 2015 and that parties remained liable for robocalls made for other purposes:

> [A]lthough our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate. … **On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.**

*Id*. at 2355 n.12 (emphasis added). Justice Gorsuch's dissent is consistent in characterizing the holding of *AAPC* as "a holding that shields *only* government-debt collection callers from past liability under an admittedly unconstitutional law." *Id*. at 2366 (emphasis added).

The Supreme Court's explanation of the consequences of its severance of the government-debt exception is in line with the well-established principle that severability

determinations are interpretations of federal law that must apply retroactively to all pending cases. "When [the Supreme Court] applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the Court's] announcement of the rule." *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993). The Supreme Court has "prohibit[ed] the erection of selective temporal barriers to the application of federal law" because "the substantive law" should not "'shift and spring' according to 'the particular equities of [individual parties'] claims' of actual reliance on an old rule and of harm from a retroactive application of the new rule." *Id.* (alterations in original) (citation omitted).

The *Harper* retroactivity rule is grounded in the idea that courts have no "constitutional authority … to disregard current law or to treat similarly situated litigants differently." *Id.* (citation omitted). Moreover, the Court's severability holding in *AAPC* was not just a matter of statutory construction, it was also a remedy for a constitutional violation. In *Harper*, the Supreme Court stated that "both the common law and our own decisions have recognized a general rule of retrospective effect for the constitutional decisions of this Court." 509 U.S. at 94 (internal quotation marks and brackets omitted).

The retroactive effect of severability is well established by Supreme Court precedent. In 1914, in *Eberle v. Michigan*, the Supreme Court held that a constitutional statute's validity "could not be impaired by the subsequent adoption of what were in form amendments, but, in legal effect, were mere nullities." 232 U.S. 700, 704-05 (1914). In *Eberele*, officers of a

brewing company charged with making beer in violation of an 1889 prohibition on manufacturing alcohol argued that the prohibition was void because subsequent amendments in 1899 and 1903 created an exception for making wine and cider in certain counties, and that exception denied the beer brewers equal protection under the law. *Id.* at 704-05. The Court agreed that the amendments violated the Equal Protection clause, but held that they were severable from the underlying 1889 prohibition on manufacturing alcohol generally, and therefore, the amendments were "mere nullities" that did not invalidate the 1889 prohibition. *Id.* Accordingly, the Court sustained the defendants' convictions. Just as the defendants in *Eberle* could not escape liability for selling beer despite the unconstitutional exceptions for those selling wine and cider at the time, Defendant Federal Insurance cannot escape liability for robocalling consumers despite the unconstitutional statutory exception for government-debt collectors at the time of the calls.

A decade after *Eberle*, the Supreme Court reaffirmed that its severability holdings apply retroactively. In *Frost*, the Court held that a 1925 amendment exempting certain corporations from making a showing of "public necessity" in order to obtain a cotton gin license constituted an unconstitutional denial of equal protection. 278 U.S. at 524-25. The Court held the 1925 amendment was severable from the 1915 law requiring a showing of "public necessity." *Id*. at 526. Although the case involved—as here—unequal treatment in violation of the Constitution, the Court held that because the 1925 amendment was unconstitutional, it was "a nullity" and "powerless to work any change in the existing statute," which "must stand as the only valid expression of legislative intent." *Id.* at 526. The

Court reasoned that "[a]n act which violates the Constitution has no power and can, of course, neither build up nor tear down. It can neither create new rights nor destroy existing ones. It is an empty legislative declaration without force or vitality." *Id.* at 527. Just as the 1925 unconstitutional amendment in *Frost* could not—even temporarily—invalidate a constitutional law passed in 1915, the 2015 unconstitutional amendment carving out government-debt calls cannot—even temporarily—invalidate the 1991 TCPA prohibition on robocalls.

### C.     The majority of courts reject Defendant's arguments and hold that severance of the government-debt exception preserves liability for TCPA robocalls placed between 2015 and 2020.

Numerous circuit and district courts have held that the government-debt exception should be severed and not affect liability for robocall violations made between 2015 and 2020. The weight of authority strongly supports the retroactive application of the Supreme Court's severability holding, ensuring that parties may still be held liable for robocall violations made in the past five years.

For example, in *Duguid v. Facebook, Inc.*, the plaintiff sought damages on behalf of a proposed class for violations of the TCPA's prohibition on robocalling that occurred, in part, in 2016. 926 F.3d 1146, 1153 (9th Cir. 2019), *cert. granted in part,* No. 19-511, 2020 WL 3865252 (U.S. July 9, 2020). As an affirmative defense, Facebook argued that the statute violated the First Amendment. *Id.* at 1149. The Ninth Circuit—like the Supreme Court in *AAPC*—"reject[ed] Facebook's challenge that the TCPA as a whole is facially unconstitutional," "sever[ed] the debt-collection exception as violative of the First Amendment," and "reverse[d] the dismissal of Duguid's amended complaint." *Id.* at 1157.

The Ninth Circuit remanded for further proceedings, recognizing that severing the unconstitutional government-debt exception from the general prohibition meant that plaintiff's TCPA claims could proceed.

Before the Supreme Court's *AAPC* decision, district courts across the country routinely denied motions to dismiss TCPA robocall claims on the grounds that the government-debt exception created an unconstitutional content-based speech restriction. These courts reasoned that even if the government-debt exception was unconstitutional, the exception was severable from the rest of § 227(b)(1)(A)(iii), and therefore the plaintiffs' claims for robocall violations unrelated to the collection of government debt could still proceed. *See Parker v. Portfolio Recovery Assocs., LLC*, No. SACV 18-02103-JVS, 2019 WL 4149436, at *3 (C.D. Cal. July 11, 2019); *Geraci v. Red Robin Int'l, Inc.*, No. 19-CV-01826-RM-KLM, 2020 WL 2309559, at *9 (D. Colo. Feb. 28, 2020), *report and recommendation adopted,* 2020 WL 1443597 (D. Colo. Mar. 25, 2020); *Rosenberg v. LoanDepot.com, LLC*, 435 F. Supp. 3d 308, 321 (D. Mass. 2020); *Doohan v. CTB Inv'rs, LLC*, 427 F. Supp. 3d 1034, 1060 (W.D. Mo. 2019); *Taylor v. KC VIN, LLC*, No. 4:19-CV-00110-NKL, 2019 WL 6499140, at *16 (W.D. Mo. Dec. 3, 2019); *Hand v. Beach Entm't KC, LCC*, 425 F. Supp. 3d 1096, 1122 (W.D. Mo. 2019); *Smith v. Truman Rd. Dev., LLC*, 414 F. Supp. 3d 1205, 1231 (W.D. Mo. 2019); *Perrong v. Liberty Power Corp.*, 411 F. Supp. 3d 258, 269 (D. Del. 2019); *Katz v. Liberty Power Corp.*, No. 18-cv-10506-ADB, 2019 WL 4645524, at *8 (D. Mass. Sept. 24, 2019); *Wijesinha v. Bluegreen Vacations Unlimited, Inc.*, No. 19-20073-CIV, 2019 WL 3409487, at *6 (S.D. Fla. Apr. 3, 2019); *Silwa v. Bright House*

*Networks, LLC*, No. 2:16-cv-235-FtM-29MRM, 2018 WL 1531913, at *6 (M.D. Fla. Mar. 29, 2018).

Since the Supreme Court's July 6, 2020 *AAPC* decision, district courts have continued to find that severance of the unconstitutional government-debt exception means that parties may still be liable under the TCPA for robocalls made after 2015. For example, in *Burton v. Fundmerica, Inc.*, the court granted a motion for default judgment for a violation of § 227(b)(1)(A)(iii), noting "[t]he Supreme Court held last month in *Barr* that one of the exceptions to this general prohibition, for calls made solely to collect a government debt, violated the First Amendment, but that it was severable from the TCPA as a whole—so, the provision on which the plaintiff's claim relies survived." No. 8:19-CV-119, 2020 WL 4504303, at *1 n.2 (D. Neb. Aug. 5, 2020); *see also Buchanan v. Sullivan*, No. 8:20-cv-301, 2020 WL 6381563, at *3 (D. Neb. Oct. 30, 2020) (noting that *Barr* sever[ed] the debt-collection exemption to the TCPA as unconstitutional, leaving the generally applicable restrictions at issue here intact"); *Schmidt v. AmerAssist A/R Sols. Inc.*, No. CV-20-00230-PHX-DWL, 2020 WL 6135181, at *4 n.2 (D. Ariz. Oct. 19, 2020) ("The exception for calls made to collect government-owned or -guaranteed debt was recently invalidated and severed by the Supreme Court [in] *Barr*. … Schmidt has not alleged that her purported debt was owned or guaranteed by the government, so *Barr* does not affect this case."); *Komaiko v. Baker Techs., Inc.*, No. 19- cv-03795-DMR, 2020 WL 5104041, at *2 (N.D. Cal. Aug. 11, 2020) ("Because the government-debt exception is not at issue in this case, the decision in [*Barr*] does not impact Plaintiffs' claims."); *Lacy v. Comcast Cable Commc'ns, LLC*, No.

3:19-CV-05007-RBL, 2020 WL 4698646, at *1 (W.D. Wash. Aug. 13, 2020) (lifting stay after *AAPC* because "while the Supreme Court invalidated the debt-collection exception, it severed the provision rather than striking down the TCPA's entire robocall restriction"); *Burton v. Fundmerica, Inc.*, No. 8:19-cv-119, 2020 WL 4504303, at *1 n.2 (D. Neb. Aug. 5, 2020) ("The Supreme Court held last month in *Barr* that one of the exceptions to this general prohibition, for calls made solely to collect a government debt, violated the First Amendment, but that it was severable from the TCPA as a whole—so, the provision on which the plaintiff's claim relies survived.").

> **D.** **Defendant urges the Court to adopt the reasoning of two district courts that misconstrued *AAPC*.**

Despite the Supreme Court's clear mandate in Justice Kavanaugh's severability analysis—which two Justices joined and four Justices concurred in judgment with—that "our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction," *AAPC,* 140 S. Ct. at 2355 n.12, Defendant contends that it cannot be held liable for calls made from 2015 to July 2020, while the government-debt exception was in effect. Defendant urges the Court to adopt the reasoning of two district courts that dismissed the plaintiffs' TCPA claims based on robocalls placed in the last five years, finding they lacked jurisdiction to enforce unconstitutional statutes. *See generally Lindenbaum v. Realgy, LLC*, No. 1:19-cv-2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020); *Creasy v. Charter Commc'ns, Inc.*, No. 20-1199, 2020 WL 5761117 (E.D. La. Sept.

28, 2020).[2] These courts misconstrued the Supreme Court's analysis as well as established principles of severability.

The *Creasy* and *Lindenbaum* courts assumed that the Supreme Court held in *AAPC* that section 227(b)(1)(A)(iii) was, in its entirety, unconstitutional and invalid. *See Lindenbaum*, 2020 WL 6361915, at *1 ("In *AAPC*, the Supreme Court held that 47 U.S.C. § 227(b)(1)(A)(iii) violated the Constitution …."); *Creasy*, 2020 WL 5761117, at *1 ("*AAPC* amounts to an adjudication that the entirety of § 227(b)(1)(A)(iii) was unconstitutional"), *5 ("the *entirety* of the pre-severance version of § 227(B)(1)(A)(iii) *is* void because it *itself* was repugnant to the Constitution"). This assumption is wrong and directly contradicted by the Supreme Court's express rejection of the contention that the entire robocall ban was unlawful. *See AAPC*, 140 S. Ct. at 2348-49 ("we disagree with plaintiffs' broader initial argument for holding the entire 1991 robocall restriction unconstitutional"). The *Creasy* and *Lindenbaum* courts then assumed that the Supreme Court cured unconstitutional provision through severance. *See Lindenbaum*, 2020 WL 6361915, at *4 (the Supreme Court "cured the unequal treatment concern by *preventing* parties from engaging in speech"); *Creasy*, 2020 WL 5761117, at *6. This assumption was also wrong. The point of the severability doctrine is to identify the portion of a statute that is unconstitutional and to "refrain from invalidating more of the statute than is necessary." *AAPC*, 140 S. Ct. at 2350 (quoting *Reagan v. Time*

---

[2] Moreover, the decisions in *Creasy* and *Lindenbaum* are invalid because the government was not provided Rule 5.1 notice and opportunity to intervene concerning the constitutional question.  Fed. R. Civ. P. 5.1. While a court may reject a constitutional challenge prior to the expiration of the government's opportunity to intervene, a court "may not enter a final judgment holding the statute unconstitutional." *Id*.

*Inc.*, 468 U.S. 641, 652-53 (1984)); *see also Koog v. United States*, 79 F.3d 452, 463 (5th Cir. 1996) (holding that the "remainder of the interim provision" of the Brady Handgun Violence Protection Act "is severable from the invalidated duties and therefore survives this constitutional attack").

For example, in *United States v. Melis*, the defendants challenged their convictions under the Anti-Riot Act on the grounds that statute is facially overbroad under the Free Speech Clause of the First Amendment. 972 F.3d 518, 525 (4th Cir. 2020). The Fourth Circuit held that it was unconstitutionally overbroad, but that the "overbroad portions of the statute are severable from the constitutionally valid remainder." *Id.* at 541. The court held that the overly broad language, "the last phrase of § 2102(b)," is "easily dropped off from the rest of the clause in which it appears, much like the government-debt exception severed in *Barr*." *Id.* at 542. The court noted that *Barr* and other cases "illustrate just how 'surgical' we ought to be in severing unconstitutional language from an otherwise inoffensive statute." *Id.* The defendants argued that their convictions should be overturned because their indictments were "premised on a conspiracy to violate the statute as a whole" but the Fourth Circuit rejected that argument, reasoning that that "because the defendants' substantive offense conduct falls under the statute's surviving purposes, their convictions must stand." *Id.* at 546-47. The same is true in this case. If a TCPA defendant's conduct falls within the part of the robocall ban that is constitutional, the defendant should still be liable regardless of when the violations occurred.

The Supreme Court's decision in *National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012), is also instructive. In *Sebelius*, the Supreme Court held that a provision of the Affordable Care Act that permitted the Secretary of Health and Human Services to "withhold all further [Medicaid] payments … to the state if she determines that the State is out of compliance with any Medicaid requirement" was unconstitutional. *Id*. at 585 (emphasis and internal quotations removed). The Supreme Court cured this unconstitutional provision by severing it from the statute, rather than striking down the entire Affordable Care Act.[3] *Id.* at 588 ("The remedy for that constitutional violation is to preclude the Federal Government from imposing such a sanction. That remedy does not require striking down other portions of the Affordable Care Act."). In so ruling, the Supreme Court did *not* hold that the Affordable Care Act was unconstitutional prior to severing this provision. In fact, the Supreme Court explicitly stated that "[t]oday's holding does not affect the continued application of § 1396c to the existing Medicaid program." *Id.* at 586.

A case that Defendant relies on is also instructive. In *Seila Law LLC v. Consumer Financial Protection Bureau*, the Supreme Court held that the CFPB's leadership by a single individual removable only for inefficiency, neglect, or malfeasance violated the separation of powers, rendering the director's decisions invalid. 140 S. Ct. 2183, 2197 (2020). The Court held the proper remedy was to sever the "for cause" provision. *Id.* at 2192 ("We go on to hold that the CFPB Director's removal protection is severable from the other statutory

---

[3] Like the TCPA, the Affordable Care Act has a severability clause. *Id*. at 586 ("The chapter of the United States Code that contains § 1396c includes a severability clause confirming that we need go no further.").

provisions bearing on the CFPB's authority."). But the Court noted that related provisions that formed the CFPB's structure and decision-making process *were not* retroactively unconstitutional. *Id.* at 2211 (The provisions of the Dodd-Frank Act bearing on the CFPB's structure and duties remain fully operative without the offending tenure restriction. Those provisions are capable of functioning independently, and there is nothing in the text or history of the Dodd-Frank Act that demonstrates Congress would have preferred *no* CFPB to a CFPB supervised by the President.").

By contrast, the approach adopted by the *Creasy* and *Lindenbaum* courts—to eliminate all liability for robocalls to cell phones over the last five years "notwithstanding Congress's decisive choice to prohibit most robocalls to cell phones"—"disrespect[s] the democratic process, through which the people's representatives have made crystal clear that robocalls must be restricted." *AAPC*, 140 S. Ct. at 2356. "That is not a judicially modest approach." *Id.* "[S]everability is a doctrine borne out of constitutional-avoidance principles, respect for the separation of powers, and judicial circumspection when confronting legislation duly enacted by the co-equal branches of government. Parties cannot, by litigation tactics or oversight, compel the courts to strike down more of a law than the Constitution or statutory construction principles demand." *Ass'n of Am. Railroads v. United States Dep't of Transp.*, 896 F.3d 539, 550 (D.C. Cir. 2018), *cert. denied sub nom. Ass'n of Am. Railroads v. Dep't of Transp.*, 139 S. Ct. 2665 (2019).

The *Lindenbaum* and *Creasy* courts acknowledged the Supreme Court's direction in footnote twelve that its decision "does not negate the liability of parties who made robocalls

covered by the robocall restriction," *AAPC*, 140 S. Ct. at 2355 n.12, but characterized it as

dicta based on the mistaken impression that only three Justices joined in it. *See Lindenbaum*,

2020 WL 6361915, at *5 ("footnote 12 is contained in a plurality opinion endorsed by only

three Justices" and "constitutes non-binding *obitur dictum*"); *Creasy*, 2020 WL 5761117, at

*4 n.4 ("This footnote is merely persuasive, as opposed to mandatory, because it appears in

an opinion commanding the votes of only three Justices, and because … it constitutes mere

"obiter dictum."). In fact, as discussed above, seven Justices joined in this holding: Chief

Justice Roberts and Justice Alito, who joined in Justice Kavanaugh's plurality opinion;

Justice Sotomayor, who disagreed with the application of strict scrutiny but agreed that the

government-debt exception was severable, *AAPC*, 140 S. Ct. at 2357; and Justice Breyer,

joined by Justices Ginsburg and Kagan, who would have held the government-debt exception

was constitutional but "concur[red] in the judgment with respect to severability," *id.*, at 2363.

Footnote twelve defines the scope of the severability judgment, clarifying what the Supreme

Court's decision as to severability "means." *Id.* at 2355 n.12.[4]

Even if footnote twelve was dicta, Supreme Court dicta is extremely persuasive. The

Eleventh Circuit has said that Supreme Court dicta is entitled to considerable deference.

*Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006) ("It would never occur to us to tell

the Supreme Court that we would decide our cases based on our analysis of its decisions, not

its own analysis of them, just because that analysis had been announced in a case where it

---

[4] The fact that a statement is made in a footnote does not mean that it is dicta. *See, e.g.*, *Fla. Dep't of Labor & Emp't Sec. v. United States Dep't of Labor*, 893 F.2d 1319, 1323 n.7 (11th Cir. 1990) ("it is not possible to characterize this footnote in [the Supreme Court's opinion] as *obiter dictum*").

was not essential to the result."); *see also ACLU v. McCreary County, Ky.,* 607 F.3d 439, 447-48 (6th Cir. 2010) ("this court considers itself bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements." (citation omitted)).

Moreover, the Supreme Court's grant of certiorari in *Duguid v. Facebook,* discussed above, confirms its intent that parties may be liable for violating the robocall prohibition over the last five years. Facebook sought review of the Ninth Circuit's severance of the government-debt exception, making the same arguments the courts accepted in *Creasy* and *Lindenbaum*. *See* Petition for Writ of Certiorari, *Facebook, Inc. v. Duguid*, 2019 WL 5390116, at *1-2, 16-22 (Oct. 17, 2019). The Supreme Court denied certiorari as to that issue while granting certiorari as to a second, unrelated issue—the definition of an automatic telephone dialing system. *See Facebook, Inc. v. Duguid*, No. 19-511, 2020 WL 3865252, at *1 (U.S. July 9, 2020). Thus, the decisions in *Creasy* and *Lindenbaum* conflict with the only appellate court to decide what effect severance of the government-debt exception has on TCPA claims based on robocalls made between 2015 and 2020, and the Supreme Court— despite granting certiorari on a separate issue in the case—denied certiorari as to the Ninth Circuit's determination.

None of the other cases Defendant cites warrant a departure from the Supreme Court's clear instruction that its decision only impacts liability for robocalls made to collect government debt. The cases are relevant only if the Court accepts Defendant's mistaken assumption that the Supreme Court found the entire robocall ban in section 227(b)(1)(A)(iii)

to be unconstitutional rather than just the government-debt exception. Most merely apply the "general rule of retrospective effect for the constitutional decisions of this Court," *Harper*, 509 U.S. at 94, without any consideration of severability issues. *See Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 751-52 (1995) (Supreme Court decision holding Ohio tolling law unconstitutional must be given retroactive effect); *Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 711-15 (1974) (appellate courts must apply the law in effect at the time they render their decisions, not at the time of judgment, "unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary"); *U.S. v. Baucum*, 80 F.3d 539, 540-41 (D.C. Cir. 1996) (recognizing that "once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)" but "Baucum's belated assertion of a constitutional defect does not work to divest that court of its original jurisdiction to try him for a violation of the law at issue").

Defendant also cites *Grayned v. City of Rockford*, where the Supreme Court held that an antipicketing ordinance was unconstitutional at the time of the appellant's arrest and conviction and did not assess the ordinance as later amended by the legislature. 408 U.S. 104, 107 & n.2 (1972). Because the statute had already been amended, the Court had no reason in its brief analysis to consider whether it would be appropriate to sever the offending portion of the statute and the implications if it had done so. In *Sessions v. Morales-Santana*, the Supreme Court cited *Grayned* in noting in dicta that a defendant can challenge his conviction "without regard to the manner in which the legislature might subsequently cure the infirmity." 137 S. Ct. 1678, 1699 n.24 (2017). The citizenship statute at issue, which required a U.S.-citizen parent to maintain a physical presence in the country for a certain period of

time that was shorter for unwed mothers than unwed fathers, had not been amended. The Supreme Court found that the law violated equal protection and concluded that "the legislature's intent, as revealed by the statute at hand" would be to abrogate the exception for unwed mothers in favor of "preservation of the general rule" of the longer physical presence requirement. *Id.* at 1699-1700. Thus, in *Sessions* the Supreme Court considered legislative intent in determining that removing the exception was the appropriate remedy, just as it did in *AAPC*. In *Sessions*, however, the Court could not "convert [the] exception for unwed mothers into the main rule" that covered married couples and unwed fathers and therefore left it "to Congress to select, going forward, a physical-presence requirement … uniformly applicable to all children born abroad with one U.S.-citizen and one alien parent, wed or unwed." *Id.* at 1686.

## IV.    CONCLUSION

Plaintiff respectfully requests that the Court deny Defendant Federal Insurance's motion.

Dated: December 8, 2020

*/s/ Avi R. Kaufman*
Avi R. Kaufman (Trial Counsel)
Florida State Bar # 84382
Kaufman P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
Email: kaufman@kaufmanpa.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I, hereby certify that on December 8, 2020, I filed the foregoing with the Court's CM/ECF system, which served the same on the counsel of record.

*/s/ Avi R. Kaufman*
Avi R. Kaufman