IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| STEWART ABRAMSON, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY, 0995316 B.C. LTD. D/B/A XENCALL and BAY AREA HEALTH, LLC,<br><br>Defendants. | No. 8:19-cv-02523-TPB-AAS<br><br><br><br><br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT XENCALL'S MOTION TO DISMISS** |

Defendant XenCall's motion must be denied.

First, the Court has subject matter jurisdiction over this action even after the Supreme Court's holding in *Barr v. American Association of Political Consultants, Inc.* that "the 2015 government-debt exception created an unconstitutional exception to the 1991 robocall restriction." 140 S. Ct. 2335, 2348 (2020) XenCall misconstrues the effect of Supreme Court's severance of the exception to argue that the entire robocall restriction was unenforceable for the time the government-debt exception was in effect. Seven Justices concurred in the severability discussion, which made clear that while "no one should be penalized or held liable for making robocalls to collect government debt" between 2015 and 2020, "our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *Id.* at 2355 n.12. This mandate is consistent with well-established severability law and has been followed by the majority of courts. The Court should decline XenCall's invitation to ignore this mandate and instead adopt the reasoning of the two district courts that misconstrued *AAPC*.[1]

---

[1] Plaintiff incorporates by reference his response to Defendant Federal Insurance Company's second motion to dismiss the amended complaint (ECF 82), which asserts a substantively

1

Second, consistent with clear Eleventh Circuit precedent, Plaintiff sufficiently pleads an Article III injury by alleging that XenCall was involved in the transmission of an unlawful prerecorded phone call to him.

Third, the Court has personal jurisdiction over XenCall because, as XenCall concedes, Plaintiff's claim arises from the business XenCall conducts in Florida – *i.e.*, supplying a calling platform to make prerecorded calls.  In fact, XenCall concedes that the call to Plaintiff was made ***from Florida*** using the XenCall calling platform (regardless of whether the XenCall account was in Bay Area Health's or Federal Insurance Company's name, as opposed to the name of some other entity or person associated with them (*see* Jantz Decl. [ECF 78-1] at ¶ 9)).

Fourth, Plaintiff sufficiently pleads an injury that is traceable to XenCall and a viable basis for XenCall's liability by alleging that XenCall provided the calling platform used to make prerecorded calls to Plaintiff by Bay Area Health and Federal Insurance Company, and willfully enabled the use of that platform for unlawful purposes, including to call Plaintiff.

 The Court should therefore deny XenCall's motion in total.

## BACKGROUND AND FACTS

The Plaintiff has brought this putative class action pursuant to the TCPA, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs.*, *LLC,* 132 S. Ct. 740, 745 (2012). Out of every 7,000,000 robocalls, there's only one TCPA lawsuit in federal court. *Compare* Herb Weisbaum, *It's Not Just You—Americans Received 30 Billion Robocalls Last Year*, NBC News (Jan. 17, 2018), https://www.nbcnews.com/business/consumer/it-s-not-just-you-americans-

---

identical argument regarding the purported temporary ineffectiveness of the TCPA.  Plaintiff does not further address this argument in this response.

received-30-billion-robocalls-n838406 (30.5 billion robocalls); *with* WebRecon, *WebRecon Stats for Dec 2017 & Year in Review* (last visited Oct. 29, 2018), https://webrecon.com/webrecon-stats-for-dec-2017-year-in-review/ (4,392 TCPA complaints).

Here, with regard to Defendant XenCall, the Plaintiff has alleged that XenCall provides internet based prerecorded call campaign services to consumers and executes calls for those campaigns en masse.  Amended Complaint (ECF 47) at ¶ 49.  Predictably, XenCall's system can place prerecorded phone calls to cellular telephone numbers in an automated manner.  *Id*.  These calls are sent without first obtaining the call recipient's consent, in violation of the TCPA.  *Id*. at ¶ 50.  XenCall has actual knowledge of this unlawful conduct.  *Id*. at ¶ 51.  Nonetheless, XenCall knowingly permits and facilitates such calls, even after learning of its partners' actions.  *Id*.  XenCall actively takes part in executing robocall campaigns, providing tools that allow the use of deceptive calling tactics and explicitly offering prerecorded calling and auto-dialer services; and promising to provide everything needed to call and/or message multiple telephone numbers at once.  *Id*. at ¶ 52.  XenCall provides (and encourages) a turnkey spam calling platform that it knows full well will be used to bombard consumers with unwanted contacts.  *Id*. at ¶ 53. XenCall provides users with local telephone numbers to make their automated calls.  *Id*. at ¶ 54.

For years XenCall has been put on notice of its customers' telemarketing activities, but remained substantially involved in the placing of spam calls for Bay Area.  *Id*. at ¶ 55.  Indeed, XenCall advertises a tool to "provide the ultimate in safe harbor protection from vexatious litigators."  *Id*. at ¶ 56.  XenCall works with its customers to try to avoid calling numbers that, when they are in receipt of an illegal call, will file a lawsuit to vindicate their rights.  *Id*. at ¶ 57. XenCall didn't take reasonable steps to prevent unwanted and illegal calls, it instead offers a

high-tech solution to reduce a caller's likelihood of getting sued for making those illegal calls. *Id*. at ¶ 58.

In this case, regardless of whether XenCall had a direct business relationship with Bay Area Health or Federal Insurance Company, it is undisputed that XenCall's platform was used from Florida to make an unsolicited, prerecorded voice call to Plaintiff's cellular telephone number in violation of the TCPA. *Id*. at ¶¶ 11, 37. As a result, Plaintiff asserts a single claim under the TCPA's prerecorded voice call provision against Defendant XenCall.

## ARGUMENT

**A. Plaintiff, Who Undisputedly Received a Prerecorded Call Made Using XenCall's Platform, has Standing to Pursue His Claim.**

The Article III requirement that plaintiffs demonstrate standing to sue is meant "to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted). To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest". *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Every court of appeals, including the Eleventh Circuit, to address the question post-*Spokeo* found that the TCPA elevated harms to legally cognizable injuries such that Article III standing is established if Plaintiffs allege a statutory violation of a procedure designed to protect against the harm the statute was designed to prevent. *See Susinno v. Work Out World Inc.*, 862 F.3d 346 (3d Cir. 2017) (finding Article III standing established based on receipt of a missed call resulting in a prerecorded voice message because "[w]hen one sues under a statute alleging the very injury [the statute] is intended to prevent, and the injury has a close relationship to a harm . . . traditionally . . . providing a basis for a lawsuit in English or American courts, a concrete injury

4

has been pleaded") (internal citations omitted); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019) (agreeing with *Sussino* that a prerecorded call is sufficient to confer Article III standing on the recipient); *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 958 (8th Cir. 2019) (clarifying post-*Spokeo* that receipt of short, prerecorded voicemail remained a concrete injury). Moreover, among trial courts, "[t]he majority of cases have recognized a concrete injury-in-fact when a plaintiff alleges an invasion of privacy (and/or minimal costs), such that Article III standing exists." *Hamza v. Dunhams Athleisure Corp.*, 2017 U.S. Dist. LEXIS 41074, at *11 (E.D. Mich. Mar. 22, 2017). This is because, as the *Sussino* court explained, "Congress was not inventing a new theory of injury when it enacted the TCPA" but instead "elevated a harm that, while 'previously inadequate in law,' was of the same character of previously existing 'legally cognizable injuries.'" 862 F.3d at 352 (citing *Spokeo*, 126 S. Ct. at 1549).

Here, there is no dispute that the Plaintiff received a prerecorded call made using XenCall's calling platform that he did not consent to. The alleged violation, then, caused the precise harms the TCPA was designed to prevent. *Sussino*, 862 F.3d at 348 (prerecorded call that lasted approximately one minute sufficient for purposes of Article III standing); *Golan*, 930 F.3d at 952 (prerecorded call the entirety of which stated "Liberty. This was a public survey call. We may call back later." was enough to establish Article III standing); *see* Amended Complaint at ¶¶ 35-36. Such violations – like here – and their close relationship to invasion of privacy and intrusion upon seclusion are, at minimum, an "identifiable trifle" sufficient for purposes of Article III.

The case law to which Xencall cites fails to persuade. *Salcedo* concerned a single text message, and Judge Prior clarified in the concurring opinion that she considered the opinion to be limited to such facts. *Salcedo v. Hanna*, 936 F.3d 1162, 1173-74 (11th Cir. 2019). At issue

here, however, is not a text message, but an unwanted prerecorded call, which alone is sufficient to distinguish *Salcedo* and align this case with all others finding that a prerecorded call *does* confer Article III standing on the recipient. Helpfully, however, the Eleventh Circuit subsequently clarified this point by distinguishing *Salcedo* with *Sussino*, which addressed a prerecorded call (like this case): "For these reasons, the Third Circuit held…that the receipt of a single unsolicited call to a cell phone and a voicemail recording constituted an injury in fact. [citing *Sussino*]… There, the court explained that "Congress squarely identified this injury" in the TCPA and that this harm bore a close relationship to the kind of harm that would have given rise to the common law cause of action of 'intrusion upon seclusion.'…**We agree**…This Court's recent decision in [*Salcedo*], that the receipt of a single unsolicited text message does not qualify as an injury in fact does not change our analysis…." *Cordoba*, 942 F.3d at 1270.

The precise standing argument XenCall makes based on *Salcedo* was recently rejected by Judge Mendoza of the Middle District of Florida in *Fischer v. Trivita Inc.*, No. 6:19-cv-2333, ECF No. 105 at *7 (M.D. Fla. July 30, 2020). Judge Mendoza determined, "Indeed, in *Salcedo*, the court 'expressly distinguished receiving a text message from receiving an unwanted phone call.' *Id.* (citing *Salcedo*, 936 F.3d at 1172). Given the differences between text messages and phone calls described by the Eleventh Circuit, along with the Eleventh Circuit's express agreement with *Susinno*, the Court concludes that Plaintiff, in stating he received a single unlawful phone call, has alleged that he has suffered an injury that is sufficiently concrete to establish Article III standing." *Id.*; *cf. Daisy, Inc. v. Mobile Mini, Inc.*, No. 2:20-cv-17-FtM-38MRM, 2020 U.S. Dist. LEXIS 175536, at *4-5 (M.D. Fla. Sep. 24, 2020) (cited in XenCall's motion) ("Importantly, it is undisputed Daisy received the fax by e-mail, not a fax machine. That distinguishes this case from others where the Eleventh Circuit found concrete injuries based on

6

plaintiffs' occupied fax machines and their lines or imposed printing costs. *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252-53 (11th Cir. 2015); *Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*, 858 F.3d 1362, 1366 (11th Cir. 2017). Likewise, almost every junk fax case Daisy cites differs because such injuries were present. If this were a regular fax case (like those situations) Daisy would have standing. *See, e.g., Bobo's Drugs, Inc. v. Fagron, Inc.*, 314 F. Supp. 3d 1240, 1243-44 (M.D. Fla. 2018). But this case is different.").

Ultimately, Plaintiff alleges the precise injuries from the prerecorded call made to him using XenCall's calling platform that the Eleventh Circuit has determined are sufficient to establishing standing under the TCPA's robocall provision. Amended Complaint at ¶¶ 35-36.

### B. The Court has Personal Jurisdiction over XenCall for Plaintiff's TCPA Claim Because It is Undisputed that the Call to Plaintiff Was Made From Florida Using the Calling Platform XenCall Supplies to Companies in Florida.

Under Florida's long arm jurisdiction statute, "A person, whether or not a citizen or resident of this state, who" "engag[es] in … business … in this state" "submits … to the jurisdiction of the courts of this state for any cause of action arising from" the business engaged in in Florida. Fla. Stat. § 48.193(1)(a)(1). Here, Plaintiff alleges, and XenCall does not dispute that it markets a calling platform that it knowingly has configured and provides to companies in in Florida to be used to make unlawful calls, and that this platform was in fact used by a company in Florida to make an unlawful call to Plaintiff.[2] Amended Complaint at ¶¶ 11, 37, 49-

---

[2] "In a motion to dismiss for lack of personal jurisdiction, a court must accept the facts alleged in plaintiff's complaint as true, to the extent that they are not contradicted by defendant's affidavits." *Kim v. Keenan*, 71 F. Supp. 2d 1228, 1231 (M.D. Fla. 1999) (citing *Cable/Home Commc'n Corp. v. Network Prods.*, 902 F.2d 829, 855 (11th Cir. 1990)). While XenCall submitted a three-page affidavit claiming that they don't technically have a contract with Bay

7

58. The TCPA allows for liability against a platform provider when the platform provider "knowingly allowed [their] client(s) to use that platform for unlawful purposes[.]" *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act 1991*, 30 FCC Rcd. 7961, 7980, ¶ 30 (2015).

This conduct subjecting a platform provider to personal jurisdiction in a state necessarily includes the conduct alleged here – *i.e.*, a user of the platform making a TCPA violative call from the state. *See, e.g., Hicks v. Health Ins. Innovs., Inc.*, No. 17-3344 (SDW) (LDW), 2017 U.S. Dist. LEXIS 214098, at *7-8 (D.N.J. Dec. 20, 2017) (cited in Defendant's motion) ("In each case, the plaintiffs injury physically occurred or the phone calls originated in the state of the court asserting jurisdiction, or this fact was not disputed."); *see also Johansen v. HomeAdvisor, Inc.*, No. 2:16-cv-121, 218 F. Supp. 3d 577 (S.D. Ohio Oct. 31, 2016) (finding that under the TCPA, a party may be subject to personal jurisdiction for the acts of its agent); *cf. Abramson v. Connected Mktg., LLC*, No. 19 C 3711, 2020 U.S. Dist. LEXIS 40144, at *9 (N.D. Ill. Mar. 9, 2020) (cited in XenCall's motion) ("Instead, Prossen and Walling only sold policies for states in which they held licenses. In making calls to Abramson, then, they directed their Pennsylvania-based insurance business at a Pennsylvania resident in Pennsylvania, not at Illinois"); *Michaels v. Micamp Merch. Servs.*, No. 6:13-cv-1920-Orl-37DAB, 2014 U.S. Dist. LEXIS 7785, at *4 (M.D. Fla. Jan. 22, 2014) (cited in XenCall's motion) ("The face of the Complaint reveals no

---

Area Health or Federal Insurance Company, Bay Area Health has specifically identified their use of XenCall's platform to call Plaintiff from Florida. Notwithstanding, to the extent the specific named XenCall subscriber is relevant to the personal jurisdiction inquiry, Plaintiff requests jurisdictional discovery regarding the relationship between XenCall, the other Defendants, and XenCall subscriber whose XenCall account was used to make the call to Plaintiff from Florida.

8

basis for this Court to exercise personal jurisdiction over an Arizona defendant who placed two calls that were received in Pennsylvania.").

This is what Plaintiff has indisputably alleged here – that XenCall is liable for Bay Area's and Federal Insurance Company's call from Florida to Plaintiff because XenCall supplied the calling platform to companies in Florida specifically to make such unlawful calls. The Court therefore has personal jurisdiction over XenCall to the extent Plaintiff sufficiently alleges XenCall's liability as a platform provider.

**C. XenCALL is Prospectively Liable under the TCPA as a Platform Provider.**

The TCPA prohibits entities from "initiating" pre-recorded marketing calls without obtaining prior express consent. But as the FCC first noted in 2013, the TCPA does not define the term "initiate." *In re Dish Network, LLC*, 28 FCC Rcd. 6574, ¶ 26 (2013). The FCC thus expanded on this in a subsequent ruling, explaining that "initiat[ing]" a telephone call may include a variety of factual circumstances, requiring analysis of (1) "who took the steps necessary to physically place the call"; and (2) "whether another person or entity was so involved in placing the call as to be deemed to have initiated it." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act 1991*, 30 FCC Rcd. 7961, 7980, ¶ 30 (2015). Regarding the second factor, the FCC stated that, where an entity—like XenCall—offers a calling platform for others to use, it will consider a third factor: whether the entity "knowingly allowed [their] client(s) to use that platform for unlawful purposes[.]" *Id.* Thus, a platform provider like XenCall is prospectively liable under the TCPA even if it did not physically make the calls at issue.

In the Amended Complaint, Plaintiff alleges the following as to XenCALL which is undisputed:

9

49. XenCall provides internet based prerecorded call campaign services to consumers and executes calls for those campaigns en masse. Predictably, XenCall's system can place prerecorded phone calls to cellular telephone numbers in an automated manner.

50. These calls are sent without first obtaining the call recipient's consent, in violation of the TCPA.

51. XenCall has actual knowledge of this unlawful conduct. Nonetheless, XenCall knowingly permits and facilitates such calls, even after learning of its partners' actions.

52. XenCall actively takes part in executing robocall campaigns, providing tools that allow the use of deceptive calling tactics and explicitly offering prerecorded calling and auto-dialer services; and promising to provide everything needed to call and/or message multiple telephone numbers at once.

53. XenCall provides (and encourages) a turnkey spam calling platform that it knows full well will be used to bombard consumers with unwanted contacts.

54. XenCall provides spoofed numbers for platform users to make automated calls.

55. For years XenCall has been put on notice of its customers' telemarketing activities, but remained substantially involved in the placing of spam calls for Bay Area.

56. Indeed, XenCall advertises a tool to "provide the ultimate in safe harbor protection from vexatious litigators."

57. XenCall works with its customers to try to avoid calling numbers that, when they are in receipt of an illegal call, will file a lawsuit to vindicate their rights.

58. XenCall didn't take reasonable steps to prevent unwanted and illegal calls, it instead offers a high-tech solution to reduce a caller's likelihood of getting sued for making those illegal calls.

*See* Amended Complaint at ¶¶ 49-58.

As Magistrate Judge Corley in the Northern District of California concluded earlier this year, these are precisely the types of allegations that support a platform provider's prospective liability under the TCPA for prerecorded voice calls:

> In considering whether an entity was otherwise so involved with a communication as to be deemed to have made it for TCPA liability purposes, the FCC has

10

>identified several relevant factors, including: (1) who creates the content of the messages; (2) who decides "whether, when or to whom" a message is sent; (3) "the extent to which a person willfully enables fraudulent spoofing of telephone numbers or assists telemarketers in blocking Caller ID, by offering either functionality to clients"; and (4) "whether a person who offers a calling platform service for the use of others has knowingly allowed its client(s) to use that platform for unlawful purposes." *See* 2015 FCC Declaratory Ruling, 30 FCC Rcd. at 7980-81.
>
>There are no factual allegations that plausibly support an inference that Ytel created the content of the communications, or determined when, how, and to whom the communications were sent. Drawing all inferences in Plaintiffs' favor, however, and based on the totality of the circumstances, Plaintiffs still plausibly allege that Ytel was so involved with the communications as to be deemed to have made them.
>
>First, Plaintiffs allege that Ytel assists MJM with spoofing of telephone numbers and blocking of Caller ID. (Dkt. No. 20 at ¶¶ 34 ("Ytel provides random selections of numbers for bulk purchase."), 35 (alleging that with such phone numbers "telemarketers can place multiple phone calls, each from a different number, to avoid built-in phone number blocking systems," and "[e]ven if a consumer blocks one phone number, calls can continue unabated from hundreds of other numbers"), 36 ("Ytel provided MJM hundreds of local phone numbers in order to place pre-recorded calls to consumers, en masse, and avoid built-in call blocking features.") (emphasis added).)
>
>Second, … given Ytel's advertised interest in ensuring its customers' TCPA compliance, the allegations support a reasonable inference that once Ytel was put on notice that its customer had been accused of violating the TCPA, it would have investigated whether there have been other lawsuits or actions taken against the customer, at a minimum by asking the customer itself so that Ytel could ensure that past mistakes are not repeated.
>
>In sum, drawing all reasonable inferences in Plaintiffs' favor, the totality of the allegations support a plausible inference that Ytel was aware of MJM's repeated TCPA violations and nonetheless continued to facilitate them by offering MJM Ytel's platform, including with spoofing and call blocking functionality.

*De la Cabada v. Ytel, Inc.*, No. 19-cv-07178-JSC, 2020 U.S. Dist. LEXIS 41439, at *12-15

(N.D. Cal. Mar. 10, 2020) (denying motion to dismiss).

11

Other district court decisions have similarly elaborated on the FCC Orders, demonstrating circumstances where an otherwise protected entity can be held liable for allowing a TCPA violator to use its platform:

- In *Hurley v. Messer*, the court considered whether two VoIP service providers could be held liable for providing calling services to an alleged TCPA violator. No. CV 3:16-9949, 2018 WL 4854082, at *4 (S.D.W. Va. Oct. 4, 2018). The VoIP providers argued—as VoIP provider XenCall does here—that they were simply "passive conduit[]" and could not have initiated the calls at issue. *Id.* The *Hurley* court rejected this argument, relying on allegations that the providers "offered a calling platform for others to use," "knew about the illegal conduct," and "had a right to control the conduct" to an extent, but allowed the robocalls to continue anyway. *Id*.

- In *Wick v. Twilio, Inc.*, the court considered whether a messaging platform could be held liable for providing texting services to a TCPA violator. No. C16-00914RSL, 2017 WL 2964855, at *4 (W.D. Wash. July 12, 2017). The court found sufficient allegations that Twilio determined the number the message would be sent from in order to "prevent messages from being filtered" or to "mask the source of the calls" *Id*.

- In *Bauman v. Saxe*, another lawsuit against Twilio, a court considered allegations that Twilio collaborated as to the "development, implementation, and maintenance" of an illegal telemarketing program. No. 2:14-cv-01125-RFB-PAL, 2019 WL 591439, at *1 (D. Nev. Feb. 13, 2019). The *Bauman* court found sufficient allegations that Twilio was a critical partner of a third-party TCPA violator, including by actively providing it with all of the tools it needed to bypass spam filters, carry out a telemarketing campaign, and violate the TCPA *en masse*. *Id*. at *1, *3.

Furthermore, courts have repeatedly held that discovery is required to explore the exact contours of the relationship between the calling parties to make a common carrier determination. *See e.g. Laccinole v. Appriss, Inc.,* 453 F. Supp. 3d 499, 503 (D.R.I. 2020) ("the precise relationship between Appriss and the victim notification service is fact-intensive and cannot be resolved at this early stage of the proceedings"); *Linlor v. Five9, Inc.,* No. 17CV218-MMA (BLM), 2017 U.S. Dist. LEXIS 108162, 2017 WL 2972447, at *4 (S.D. Cal. July 12, 2017) ("[This] Court, like other district courts have done in analogous cases, declines to find as a matter of law, at the pleadings stage, that Defendant is a common carrier exempt from liability

under the TCPA."); *Couser v. Pre-paid Legal Servs., Inc.*, 994 F. Supp. 2d 1100, 1104-05 (S.D. Cal. 2014) ("[W]ith only pleadings to go on and no discovery as to the precise relationship between CallFire and Legal Shield, it is simply too early in this litigation for the Court to affirmatively conclude that CallFire is the middleman it claims."). This is further warranted here where XenCall has a history of providing services to companies to make illegal calls and has developed services that it offers to them in hopes that they will avoid getting sued.

As such, based on the allegations in the Amended Complaint, XenCall is prospectively liable to Plaintiff and the class as the provider of the platform used to make Defendants' illegal calls, and because of XenCall's prospective liability as platform provider, Plaintiff's Article III injury is fairly traceable to XenCall's conduct.

## CONCLUSION

For the foregoing reasons, the Court should deny XenCall's motion in all respects.

Respectfully submitted,

Dated: December 9, 2020

*/s/ Avi R. Kaufman*
Avi R. Kaufman (Trial Counsel)
Florida State Bar # 84382
Kaufman P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
Email: kaufman@kaufmanpa.com

*Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

I, hereby certify that on December 9, 2020, I filed the foregoing with the Court's CM/ECF system, which served the same on the counsel of record.

*/s/ Avi R. Kaufman*
Avi R. Kaufman
